174 N.J. Super. 603 (1980)
417 A.2d 103
IN THE MATTER OF MARGARET MAY CARLSON, PETITIONER-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 1980.
Decided June 20, 1980.
*604 Before Judges FRITZ, KOLE and LANE.
Richard A. Friedman argued the cause for appellant (Ruhlman & Butrym, attorneys; Richard A. Friedman and Cassel R. Ruhlman, Jr., on the brief).
William P. Malloy, Deputy Attorney General argued the cause for respondent Teachers' Pension and Annuity Fund (John J. Degnan, Attorney General of New Jersey, attorney; Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was delivered by FRITZ, P.J.A.D.
The sole issue involved in this appeal concerns the time when a teacher becomes sufficiently "at work" that a subsequent accident might be said to have resulted from the performance of *605 his or her regular or assigned duties within the contemplation of N.J.S.A. 18A:66-39(c).
The resolution of factual disagreements is not one of our problems in this appeal, for the essential facts are not in dispute. For instance, it is not contested that a fall on the school property at a time when Margaret May Carlson, the applicant in the agency and appellant here, was required by her teaching duties to be in the school, directly caused Carlson to become "statutorily permanently and totally disabled" and that that fall was a "traumatic event" as that term is used in the statute in question. A single question remains from the substantially agreed facts and it is essentially a legal one: Do the time and place of the occurrence mandate exclusion from statutory coverage because the event did not occur "during and as a result of the performance of [Carlson's] regular or assigned duties"? The administrative law judge answered this inquiry in the affirmative. The Board of Trustees of the Teachers' Pension and Annuity Fund (Board) adopted his findings of fact and conclusions of law and "affirmed the denial of Accidental Disability retirement for Margaret May Carlson." We reverse.
Carlson was employed as a teacher in the Roseland school system and was enrolled in the Teachers' Pension and Annuity Fund. Her employment required that she arrive at the school premises not later than 8:35 a.m. This requirement was imposed to insure ready availability for service when the bell rang at 8:55 a.m. to signal "the commencement of the school day," as the State puts it in its counterstatement of facts. Uncontroverted testimony demonstrates that the 20-minute (or more) period between arrival and the bell marking the commencement of school time was freely available to the teacher for whatever use he or she wanted to make of it. It is clear, and wholly credible, that the activities during this time are as varied as the natures and inclinations of the many teachers. Congregation in "the teachers' room"  a room reserved for the "rest and relaxation" of the teachers; "there's a lavatory there and everything"  was apparently a common event although a myriad of activities resulted. The testimony on cross-examination of a colleague of Carlson is graphic:

*606 Q What do teachers do in the teacher's room?
A On the day in question?
MR. MOORE [Attorney for the Board]: Generally.
THE COURT: At that early hour?
MR. MOORE: Between 8:35 and 8:55 when they're there?
A While they're there, different teachers do different things. Some work on their papers, some talk, some read a book, some have a cup of tea or glass or [sic] water or juice.
Q Read newspapers?
A Depends on the individual and what he has to do that day.
Q And socialize?
A Some, right.
Q There's nothing in particular you're required to do by the school during that 20 minute period?
A Not that I'm aware of other than make sure that you're ready for your class.
Q At 8:55?
A Right.
But when that bell rang at 8:55 teacher choice disappeared. The school day commenced. Contractually imposed teacher duties began.
On the day in question a fairly unique and atypically communal activity engaged the attention of the teachers. A "little get together," characterized in the findings in the agency as "an informal get-together," was held in the teachers' room to welcome back the newly married principal and sixth grade teacher. Most of the teachers attended; one had baked a cake. The affair was quite modest: no beverages were served. Then the 8:55 bell rang signaling the commencement of the school day and imposing upon Carlson the requirement that she immediately repair to the school door to escort her pupils to the classroom. The administrative law judge describes in his findings what then happened:
... At this point, Petitioner, who was in the vicinity of the door of the teacher's room, walked from the door toward a couch on the other side of the room, in order to get her pocketbook and proceed to the playground to pick up her class of students and lead them to her classroom. As she proceeded to walk from the door, without warning, suddenly and unexpectedly her feet went out from under her and she fell heavily to the floor on her back. [Emphasis supplied]
As is implicitly acknowledged in the findings of the administrative law judge, there was no competent evidence as to what caused Carlson to fall.
*607 The question which troubled that judge was "whether the traumatic event occurred during and as a result of the performance of her regular and assigned duties." That inquiry is, of course, not only relevant but under the facts of this case dispositive. Relying exclusively on two unreported Appellate Division determinations, he concluded that the traumatic event fell short of satisfying either the "during" test or the "as a result of" test.
We are well aware that workers' compensation principles do not govern claims under the accidental disability retirement provisions of the teachers' pension and annuity fund. Russo v. Teachers' Pension and Annuity Fund, 62 N.J. 142 (1973). We are equally aware that "liberality" in the distribution of such benefits contravenes legislative intent respecting administration of these funds. Cattani v. Board of Trustees, 69 N.J. 578, 583 (1976). Accordingly, in deference to both the Legislature and our court of last resort we bring to this appeal a studied, conservative view of both the statute and the facts. Nevertheless, we are of the opinion that Carlson qualifies for accidental disability retirement and the denial of that relief in the agency was error.
We need not consider in this case the infinitely more difficult proposition respecting the obligation of teachers from the time of their mandated presence on the premises  in this case, 8:35  until the ringing of the bell signaling the commencement of the school day, such as that of supervision of early arrivals or room preparation. See Titus v. Lindberg, 49 N.J. 66 (1967). For in the case before us the event did not happen until after the 8:55 bell had rung and at a time when the teachers were required to perform certain functions. One of these required functions was for Carlson to go from where she was to the school door and playground to meet her charges. It is this which she was doing when she became totally disabled. We are persuaded that the injury resulting from the doing of something required to be done by the employment contract, here the movement of the teacher from where she is on the school *608 premises to where she is compelled to go to meet those she has been directed to meet, at the time when that act is required to be done, is an injury sustained during and as a result of the performance of regular or assigned duties.
It appears to have been the view of the administrative law judge that anything done at any time prior to contact between teacher and the pupils she was required to shepherd was only preparatory to that which he considered "actual performance." While such a view has the virtue of an objective standard, it ignores the very practical consideration that Carlson obviously was not expected to stand in the schoolyard door from 8:35 until 8:55. No one can doubt that she was expected to perform this required union with her pupils by going from here to there and that necessary maneuver was as much a requirement of the job as was the actual liaison.
The unreported cases on which the administrative law judge relied are distinguishable. In one the claimant was injured five minutes before his work shift began. In the other the claimant, an employee of the Division of Motor Vehicles, was on his way home from work. We held that even in those circumstances the event occurred "during" the performance of assigned duties because he had certain "incidental enforcement" duties to be performed when coming to or going from work. But he was not engaged in doing anything related to these incidental enforcement duties when his vehicle was struck by another. Also distinguishable are Boston Retirem. Bd. v. Contributory Retirem. Appeal Bd., 340 Mass. 109, 162 N.E.2d 821 (Sup.Jud.Ct. 1959), and Boston Retirem. Bd. v. Contributory Retirem. Appeal Bd., 340 Mass. 112, 162 N.E.2d 824 (Sup.Jud.Ct. 1959). In the former the claimant was on her way home to lunch and in the latter the claimant was returning to her work from lunch. We need look no further than New Jersey to find case law exempting "going and coming" injuries from statutory benefits of this nature. O'Keefe v. Board of Trustees, 131 N.J.L. 502 (Sup.Ct. 1944), aff'd o.b. 132 N.J.L. 416 (E. & A. 1945). Carlson's movement toward the required connection with her students can hardly be characterized as a "going and coming" matter.
*609 Reversed and remanded for the calculation and payment of appropriate benefits.
LANE, J.A.D. (dissenting).
The majority reverses the final administrative determination of the Board of Trustees of the Teachers' Pension and Annuity Fund on the ground that the accident occurred after the bell rang summoning the teachers to proceed to the playground to pick up their classes of students and lead them to the classrooms. I do not agree that petitioner's teaching duties began before she picked up her class at the playground. In my opinion there was sufficient credible evidence in the record to support the findings of fact by the administrative law judge whose decision was accepted by the Board of Trustees of the Teachers' Pension and Annuity Fund. I agree with his legal conclusions. I would, therefore, affirm the denial of petitioner's application for accidental disability retirement.