LOUIS POLLARA, PETITIONER-APPELLANT, v. THE BOARD OF TRUSTEES OF THE POLICE AND FIREMEN'S RETIREMENT SYSTEM OF NEW JERSEY, RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 15, 1982--Decided April 13, 1982.

506

Before Judges BISCHOFF, KING and POLOW.

*Christopher A. Ferrara* argued the cause for appellant (*Peter C. Vitanzo*, attorney).

*Robert K. Walsh*, Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman*, Attorney General of New Jersey, attorney; *Erminie L. Conley*, Assistant Attorney General, of counsel).

The opinion of the court was delivered by

KING, J. A. D.

This case involves the eligibility of a policeman for line-of-duty accidental disability retirement benefits. In August 1978 petitioner, formerly a patrolman with the Newark Police Department, filed an application with the Police and Firemen's Retirement System (PFRS) for accidental disability retirement benefits, alleging that he had become totally disabled as a result of a job-related accident sustained on May 24, 1976. The PFRS board initially denied accidental disability retirement benefits in January 1979, although it did grant an ordinary disability retirement. The accidental retirement benefit rate is two-thirds of annual salary, *N.J.S.A.* 43:16A–7(2)(b); the ordinary disability retirement rate is 40% of annual salary, *N.J.S.A.* 43:16A–6(2)(b). On petitioner's application to reconsider, the board of trustees reaffirmed its denial and ruled that there was no factual dispute requiring a hearing. Upon appeal to this court we remanded the matter for a factual hearing.

After a hearing on the remand the administrative law judge found that petitioner's total disability was the direct result of the alleged traumatic event but that the event did not occur during the performance of petitioner's regular duties, as required by the statute. Accordingly, the judge recommended that the board's initial denial be affirmed. After considering petitioner's exceptions the PFRS board issued a final decision adopting administrative judge's decision. On this appeal petitioner contends that the board erred in reaching the legal conclusion that the accident did not occur during and "as a result of the performance of his regular or assigned duties," within *N.J.S.A.* 43:16A–7(1).

Petitioner had served on the Newark Police Department since 1964. On May 24, 1976 he reported about 15 minutes before the 7:45 a. m. roll call which started his shift. All officers were required by regulation to report 15 minutes before the shift's roll call. Failure to so report could lead to discipline, in the discretion of the sergeant. Petitioner testified, without contra-

diction, that the officers were compensated for this 15-minute pre-roll call period. On the day of the accident petitioner used the pre-shift 15 minutes to don his uniform and equipment, read the bulletin board, check the teletype for recent criminal activity and scan the stolen-car list. He dressed in the downstairs locker room and performed these other tasks on the main floor, after which he apparently returned to the locker room to await roll call.

At 7:45 a. m. the roll call bell rang. Petitioner ascended the stairway between the locker room and the first-floor roll call area; in his words, the accident happened as follows: "I was talking and going up the stairs with two other fellow officers and as I reached to hold on, grasped the handrail, roughly around the fifth step, the handrail broke off the stairs and I fell off the stairs sideways down into the stairwell." He injured the right side of his body, particularly the knee, which eventually required surgery. After attempts to return to light duty, he retired as totally disabled. The administrative law judge ruled that petitioner had satisfied all statutory criterion except one: the traumatic event did not occur "during and as a result of the performance of his regular or assigned duties."

Accidental disability retirement benefits under PFRS are governed by *N.J.S.A.* 43:16A–7(1), which states in pertinent part:

> (1) Upon the written application by a member in service ... any member may be retired ... on an accidental disability retirement allowance; provided, that the medical board, after a medical examination of such member, shall certify that the member is *permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties* and that such ... member is mentally or physically incapacitated for the performance of his usual duty and of any other available duty in the department which his employer is willing to assign to him. [Emphasis supplied]

This subsection is the result of a 1964 amendment (*L.*1964, *c.* 241, § 4) which abandoned the former and more liberal standard that the disability must have been the natural and proximate effect of an accident met in the actual performance of duty. *Cattani v. Police & Firemen's Retire. Sys. Trustees,* 69 *N.J.* 578,

583 (1976). The purpose of the several 1964 amendments was to increase the difficulty in qualifying for benefits. The amendments were the "legislative response" to the courts' "liberal application of the statute." *Ibid.*

■ Thus, there are four statutory prerequisites to recovery: (1) permanent and total disability; (2) occurrence of a traumatic event; (3) disability directly resulting from the event and (4) occurrence "during and as a result of the performance of" duty. Only the last is in issue here. The administrative law judge and the PFRS board took a narrow view of the concept of duty, holding that since petitioner was not on patrol or escorting prisoners, his usual duties, at the moment of his fall, the statutory test was not met. Also, the judge was impressed by petitioner's admission that he first dressed, performed his informational functions on the main floor and then apparently returned to the locker room to talk briefly with his colleagues as they waited the roll call bell. Implicit in the judge's ruling was the premise that because petitioner had finished his pre-shift duties and returned to the locker room, climbing the stairs to the squad room for roll call was his own personal choice not required by his employment.

This case is very similar to *In re Carlson*, 174 *N.J.Super.* 603 (App.Div.1980) (Lane, J. A. D., dissenting). There, a teacher was disabled by a fall sustained in the teachers' room just after the 8:55 a. m. bell rang signalling the start of the school day. Her job required that she arrive at 8:35 a. m. after which she was free until 8:55 a. m. Many of her colleagues congregated in the teachers' room during that free time. On the day of the accident there was "an informal get-together" in the teachers' room to welcome back a newly-married principal and teacher. When she fell, petitioner was walking to get her pocketbook, after which she would have proceeded to the playground to escort pupils to the classroom, her required duty.

This court rejected the board's finding that the fall did not occur either "during" or "as a result of" the performance of regular duties. *Id.* at 607. We reasoned

... [T]he event did not happen until after the 8:55 bell had rung and at a time when the teachers were required to perform certain functions. One of these required functions was for Carlson to go from where she was to the school door and playground to meet her charges. It is this which she was doing when she became totally disabled. We are persuaded that the injury resulting from the doing of something required to be done by the employment contract, here the movement of the teacher from where she is on the school premises to where she is compelled to go to meet those she has been directed to meet, at the time when that act is required to be done, is an injury sustained during and as a result of the performance of regular or assigned duties. [at 607–608]

Pertinent to the instant case, we rejected the view of the administrative law judge that anything occurring before actual contact between teacher and pupil fell short of performance of duties:

... While such a view has the virtue of an objective standard, it ignores the very practical consideration that Carlson obviously was not expected to stand in the schoolyard door from 8:35 until 8:55. No one can doubt that she was expected to perform this required union with her pupils by going from here to there and that necessary maneuver was as much a requirement of the job as was the actual liaison. [at 608]

Thus, *Carlson* extended the scope of the "as a result of" test to conduct preliminary but necessary to the actual performance of the required duty. Leaving aside the "during" test, we conclude that a reasonable interpretation of the statute mandates a finding that petitioner here was hurt "as a result of" performing a regular duty; he was required by his employment to be in the locker room before his shift began and he was required to attend roll call when the 7:45 bell rang; climbing the stairs from the locker room to the roll call area was a "necessary maneuver" which was as much a job requirement as was actual attendance at roll call. He was paid for the 15 minutes before roll call during which he engaged in activity useful to his job efficiency. His walk to roll call was at least as necessary as Carlson's retrieval of her purse before embarking on her mandated route; indeed petitioner here was headed directly to his required destination while petitioner in *Carlson* was on a preliminary personal detour when she was hurt. To require that petitioner actually be patrolling the streets or escorting prisoners was overly restrictive. Although eligibility

was tightened by the 1964 amendment, the pension statute as amended must still be construed with reasonable liberality in favor of those intended to be benefited. *Hillman v. Pub. Emp. Retire. Sys. Trustees,* 109 *N.J.Super.* 449, 455 (App.Div.1970). Thus, we conclude that the act applies, as confirmed by *Carlson,* to all conduct necessary to the performance of required duties, such as walking to a work station or to a mandatory daily meeting.

There remains the other component, whether the event occurred "during" the performance of duties. In *Carlson* the court eschewed consideration of "the infinitely more difficult proposition respecting the obligation of teachers from the time of their mandated presence on the premises . . . until the ringing of the bell signaling the commencement of the school day, such as that of supervision of early arrivals or room preparation." 174 *N.J.Super.* at 607. This comment arguably augurs that *Carlson* can serve as no precedent here, where the incident occurred before the official start of the shift but during the preparation period. But we find the pre-shift period here significantly different from that in *Carlson,* where teachers were free to do as they pleased after their obligatory early arrival. In this case policemen undisputedly were expected to perform certain duties during the 15 minutes before roll call: dress in uniform, prepare equipment, read the bulletin board, check the teletype and stolen-car list, and learn of the previous day's offenses. They were subject to discipline for having improper equipment or for arriving later than 15 minutes before the shift. On occasion officers were sent out on emergencies between 7:30 and 7:45. The police report of the incident, approved by the captain, characterized the event as "Police Officer Injured on Duty." In reality, the shift began at 7:30, despite the official 7:45 starting time. We find no support for the judge's finding that petitioner "had not started actual performance of his regular or assigned duties when he fell."

Reversed and remanded for calculation and payment of appropriate benefits.