901 A.2d 441

ARNELL MASON, PETITIONER–APPELLANT, v. DEPARTMENT OF THE TREASURY, DIVISION OF PENSIONS, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted May 30, 2006—Decided June 29, 2006.

382

Before Judges CUFF, PARRILLO and HOLSTON, JR.

*Arnell Mason,* appellant pro se.

*Zulima V. Farber,* Attorney General, attorney for respondent (*Michael J. Haas,* Assistant Attorney General, of counsel; *Marc Krefetz,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

CUFF, P.J.A.D.

In this appeal we must decide whether a police officer, who was called to active duty in the United States military, granted a leave of absence from his public employer, and wounded in the course of active military service, qualifies for an accidental disability pension. We hold that he does not qualify because he was not injured and did not become permanently and totally disabled as a direct result of a traumatic event that occurred during and as a result of his duties as a municipal police officer.

The facts are not in dispute. From December 20, 1993 to February 28, 2005, Arnell Mason was employed by the City of Newark (City) as a police officer. Petitioner enrolled in the Police and Fireman's Retirement System (PFRS) on January 1, 1994. Prior to his employment by the City, petitioner served in the United States Army. He was discharged honorably in October 1993. On June 11, 2001, petitioner re-enlisted in the United States Army Reserve. On November 15, 2001, petitioner was called to active duty and placed on approved military leave by the City. The day before petitioner was activated, the City issued an Executive Order that set forth its policy concerning employees called to active military duty. The order declared that these employees would be granted leave and paid the difference between their military salary and municipal salary. The City would also continue to make all pension contributions. Petitioner returned to municipal employment in August 2002.

On February 6, 2003, petitioner was called to active military duty again and deployed to Iraq. Once again, petitioner was placed on approved military leave, the City paid the difference between his military and municipal salary, and made all required contributions to PFRS.

On October 5, 2003, while on a military police patrol in Baghdad, petitioner's vehicle was ambushed and struck by a roadside bomb. As a result of the attack, petitioner suffered Post Traumatic Stress Disorder (PTSD) as well as physical injuries. On his return from active duty, petitioner continued to suffer from PTSD and was diagnosed with permanent and progressive PTSD.

On March 24, 2004, petitioner filed an application for accidental disability retirement. On February 15, 2005, the PFRS Board approved an ordinary disability retirement for petitioner. He appealed the denial of an accidental disability retirement. His request for a hearing was denied because there were no facts in dispute. The Final Administrative Determination found that there was no evidence that petitioner was under the administrative supervision and control of the City while on military leave. The PFRS Board also found that his injury occurred while on active military duty in Iraq and was, therefore, "not a direct result of an accident that occurred during [his] regular and assigned duties with the City of Newark."

On appeal, petitioner argues that his approved military leave status and federal law render him eligible for accidental disability retirement benefits. We disagree.

A member of PFRS is eligible for an accidental disability pension if found to be "permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties . . . ." *N.J.S.A.* 43:16A–7(1).

In *Kasper v. Board of Trustees of the Teachers' Pension and Annuity Fund*, 164 *N.J.* 564, 754 *A.*2d 525 (2000), the Supreme Court evaluated the requirements for an accidental disability

retirement allowance under PFRS and other major public employ-ee pension funds. Specifically, the Court addressed the Legisla-ture's intent in requiring that members of those funds be disabled as the direct result of an accident "occurring during and as a result of the performance of his regular or assigned duties." *Id.* at 575, 754 *A.*2d 525. The Court noted that the statutes governing those pension funds were amended in the 1960s to substitute, among other things, the language "during and as a result of the performance of his regular or assigned duties" for the phrase "arising out of and in the course of employment." *Id.* at 575–76, 754 *A.*2d 525. The fundamental purpose of those amendments was to make the granting of an accidental disability pension more difficult. *Id.* at 576, 754 *A.*2d 525. Essentially, "the legislative focus was to narrow the cases that would qualify for an accidental disability pension." *Id.* at 577, 754 *A.*2d 525.

Although the legislative history surrounding the amendments is limited, the Kasper Court determined that they were "intended to reestablish the integrity of the premises rule and eliminate the judicially created exceptions to the going and coming rule." *Id.* at 580, 754 *A.*2d 525.[1] In other words, to qualify for accidental disability benefits, "the accident must occur on premises owned or controlled by the employer, and not during activities encompassed within the myriad of coming and going exceptions that had sprung up." *Ibid.* To guarantee that outcome, the Legislature required that the accident take place " 'during and as a result of the performance of [the employee's] regular and assigned duties,' " precluding an award of accidental disability benefits to persons who sustain injuries on premises neither owned nor controlled by the employer. *Ibid.*

---

[1] The Kasper Court defined the "premises rule" as encompassing only those accidents occurring on the employer's premises. *Kasper, supra,* 164 *N.J.* at 578, 754 *A.*2d 525. In addition, " 'the going and coming rule ... precluded an award of compensation benefits for injuries sustained during routine travel to and from an employee's regular place of work.' " *Id.* at 578, 754 *A.*2d 525 (quoting *Livingstone v. Abraham & Straus, Inc.,* 111 *N.J.* 89, 96, 543 *A.*2d 45 (1988)).

■ Accordingly, a worker will qualify for an accidental disability pension if he or she is injured on premises owned or controlled by the employer, during or as a result of the actual performance of his or her duties. For example, in *Pollara v. Board of Trustees, Police and Firemen's Retirement System,* 183 *N.J.Super.* 505, 508, 444 *A.2d* 616 (App.Div.1982), a police officer was injured during his response to the signal to assemble for roll call. The petitioner fell off the stairs and into the stairwell suffering disabling injuries when the stair rail broke away from the wall. *Ibid.* We held that the officer qualified for accidental disability retirement benefits because he was injured while performing regularly prescribed duties as a police officer. *Id.* at 510–11, 444 *A.2d* 616.

■ As the statute, legislative history and case law demonstrate, accidental disability benefits are only awarded to an employee injured by a traumatic event that occurs during and as result of the performance of regular and assigned duties. Petitioner cannot satisfy this test because he was injured while on active duty with the United States Army and as a result of his duties as a soldier. In short, his injury occurred neither on premises owned or controlled by the City nor as a result of his regular and assigned job responsibilities as a police officer for the City.

■ The actions by the City to encourage enlistment cannot be considered authorized outside employment that may, under certain circumstances, allow an injured employee to qualify for accidental disability benefits. The essential ingredient for eligibility based on authorized outside employment is that the police officer must be working for his employer at the time the officer undertakes the additional assignments. *See Div. of Pensions and Benefits Fact Sheet # 55* (December 2002). Here, petitioner was on leave from his position with the City and was subject to the direction and control only of the United States Army.

■ Similarly, the provisions of the federal Uniformed Services Employment and Reemployment Rights Act of 1994, 38 *U.S.C.A.*

§§ 4301–4333, cited by petitioner, do not advance his argument. These provisions generally concern a veteran's reemployment rights following service and attempt to mitigate the disruption to a veteran's career caused by military service. Thus, 38 *U.S.C.A.* § 4316(a) and 38 *U.S.C.A.* § 4318(a)(2)(A) respectively require that a veteran does not lose seniority or service time for pension purposes while on active duty. Petitioner received these protections and more. The action by the PFRS Board does not contravene these rights. Petitioner lost neither seniority nor service time. The rights conferred by Congress on veterans do not alter the eligibility criteria for a disability retirement. The PFRS Board treated petitioner as any other applicant. His application for accidental disability retirement benefits was denied because he was disabled as a direct result of injuries suffered in Iraq in the performance of his regular and assigned duties as a member of the United States Army rather than as a result of injuries suffered in the performance of regular or assigned duties as a police officer for the City. Accordingly, we affirm the PFRS Board's denial of petitioner's application for accidental disability benefits.

Affirmed.