(No. 62767

JAMES A. JOHNSON, Appellee, v. THE RETIRE-
MENT BOARD OF THE POLICEMEN'S ANNUITY
AND BENEFIT FUND, Appellant.

*Opinion filed December 19, 1986.*

RYAN, MORAN and MILLER, JJ., dissenting.

James D. Montgomery and Judson H. Miner, Corporation Counsel, of Chicago (Mary K. Rochford and Joseph A. Moore, of counsel), for appellant.

Mark D. Olson, of Olson & Jeddeloh, of Chicago, for appellee.

Stephanie Ellbogen, Thomas J. Pleines, Thomas G. Draths, and Joseph V. Roddy, of Chicago, for *amicus curiae* Fraternal Order of Police, Chicago Lodge No. 7.

CHIEF JUSTICE CLARK delivered the opinion of the court:

On October 12, 1982, the plaintiff, James A. Johnson, a Chicago police officer, applied for duty-disability benefits to the defendant, the Retirement Board of the Policemen's Annuity and Benefit Fund. According to the Illinois Pension Code, a policeman who becomes disabled is entitled to "ordinary" disability benefits equal to 50% of his salary at the time the disability occurs. (Ill. Rev. Stat. 1983, ch. 108½, par 5—155.) However, if the policeman is injured while performing an "act of duty," he may receive "duty" disability benefits equal to 75% of his salary. (Ill. Rev. Stat. 1983, ch. 108½, par. 5—154.) The Illinois Pension Code defines an act of duty as:

> "Any act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life, imposed on a policeman by the statutes of this State or by the ordinances or police regulations of the city in which this Article is in effect or by a special assignment; or any act of heroism performed in the city having for its direct purpose the saving of the life or property of a person other than the policeman." Ill. Rev.

Stat. 1983, ch. 108½, par. 5—113.

The sole issue on appeal is whether the plaintiff's injury was sustained as the result of an act of duty, entitling him to duty-disability benefits.

The factual scenario in this case is essentially undisputed. On July 20, 1981, the plaintiff was assigned to traffic-control duty at the intersection of Michigan Avenue and Wacker Drive, in Chicago. Plaintiff testified that, while at his assigned post, a citizen standing at the northwest corner of the intersection called to him for assistance regarding a traffic accident. In the process of crossing the intersection to investigate and respond, the plaintiff slipped on wet pavement and fell. As a result of the fall, the plaintiff ruptured the distal tendon in his right bicep. Corrective surgery was unsuccessful, and the plaintiff's right hand remained paralyzed.

The defendant held a hearing on the plaintiff's claim and concluded that the plaintiff was not entitled to duty-disability benefits. The defendant reasoned that the injury sustained was not the result of a special risk, but rather resulted from an act assumed by any citizen, "*i.e.* traversing a street"; therefore the plaintiff was not injured in an act of duty as defined in the Illinois Pension Code.

Thereafter, the plaintiff brought his complaint to the circuit court of Cook County under the Administrative Review Law (Ill. Rev. Stat. 1983, ch. 108½, par. 5—228). The circuit court entered an order affirming the defendant's decision.

The appellate court reversed the circuit court's affirmation of the defendant's decision. The appellate court held that "whenever a police officer is injured while performing his duty of protecting and serving the public, *** he is entitled to duty-disability benefits." (137 Ill. App. 3d 546, 549.) The appellate court concluded that

the plaintiff's injury occurred while "he was engaged in activities related to his duty as a police officer to protect and serve the public," thus entitling him to duty-disability benefits. 137 Ill. App. 3d 546, 548.

The defendant argues before this court that police officers injured while performing those inherently dangerous duties that only police officers are called upon to perform are admittedly entitled to duty-disability benefits. Conversely, the defendant states, police officers injured while performing the more routine tasks that civilians may perform are covered by section 5—155 of the Illinois Pension Code, which provides for ordinary disability benefits. The defendant concludes that the act of walking across a street is an act assumed by any citizen, thus entitling the plaintiff to only ordinary disability benefits.

At the outset of our analysis we are mindful of the judicial role in construing a statute; namely, to ascertain the intent of the legislature and give it effect. (*City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336, 340-41.) Where construction of pension statutes is necessary, the rule is that pension acts must be liberally construed in favor of rights of the pensioner. (See *Board of Trustees v. Christy* (1980), 246 Ga. 553, 555, 272 S.E.2d 288, 291.) It must be noted that the pension fund in question was "created and maintained for the benefit of its policemen, their widows and children." See Ill. Rev. Stat. 1983, ch. 108½, par. 5—101.

We do not find anything in the statute or in its legislative history to support the defendant's strained construction that the term "special risk" only encompasses "inherently dangerous" activities. Police officers assigned to duties that involve protection of the public discharge those duties by performing acts which are similar to those involved in many civilian occupations. Driving an automobile, entering a building, walking up stairs,

and even crossing the street are activities common to many occupations, be it policeman or plumber.

There can be little question, police officers assigned to duties that involve protection of the public discharge their responsibilities by performing acts which are similar to those involved in many civilian occupations. The crux is the capacity in which the police officer is acting.

When a policeman is called upon to respond to a citizen, he must have his attention and energies directed towards being prepared to deal with any eventuality.

Additionally, unlike an ordinary citizen, the policeman has *no* option as to whether to respond; it is his duty to respond regardless of the hazard ultimately encountered. In the case at bar, at the time of his disabling injury, the plaintiff was discharging his sworn duties to the citizens of Chicago by responding to the call of a citizen to investigate an accident. There is no comparable civilian occupation to that of a traffic patrolman responding to the call of a citizen.

The defendant's ultimate reliance on the fact that the plaintiff was "traversing a street" when he was injured is misplaced. The provisions of section 5—154 of the Illinois Pension Code (Ill. Rev. Stat. 1983, ch. 108½, par. 5—154) conferring the right to duty-disability benefits do not require that an officer be injured *by* an act of duty. Rather, the duty disability is awarded when an officer is "disabled *** as the result of injury incurred *** *in the performance of an act of duty.*" (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 108½, par. 5—154.) In the plaintiff's case, the act of duty was the act of responding to the call of a citizen for assistance. In performing that act, he was injured.

The defendant's interpretation envisions a police officer involved in a gun battle, a high-speed car chase, or some other obviously dangerous situation in order to qualify for duty-disability benefits. This is an overly re-

strictive and unrealistic interpretation. If this court were to adopt the defendant's narrow reading of section 5—113, it could discourage police officers from the dedicated and enthusiastic performance of their duties, to the detriment of all the citizens of Chicago.

While this is a case of first impression before this court under the current statute, other jurisdictions have addressed this issue under similar statutes. Those jurisdictions have held:

> "A policeman is actually engaged in the performance of his duty for the protection of life and property whenever he is carrying out the official orders or requirements of his office. Whether he be patrolling, investigating, or directing traffic, the policeman is the very essence of and should stand as a symbol of the protector of life and property." (*Blanchard v. New Orleans Police Department* (La. App. 1968), 210 So. 2d 585, 588.)

See also *Pollara v. Police & Firemen's Retirement System Trustees* (1982), 183 N.J. Super. 585, 444 A.2d 616; *Minor v. Sonoma County Employees Retirement Board* (1975), 53 Cal. App. 3d 540, 26 Cal. Rptr. 16.

We conclude that the action of the plaintiff in crossing the intersection to respond to a citizen's call for assistance constitutes an "act of duty" as defined in the Illinois Pension Code. Therefore, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE RYAN, dissenting:

I do not agree with the majority's conclusion that the plaintiff was engaged in an "act of duty" as prescribed by statute as a requirement of the enhanced pension when he was injured. The opinion emphasizes the part of the Pension Code that awards duty disability when an officer is disabled as a result of an injury incurred "in the performance of an act of duty." (Ill. Rev. Stat. 1983,

ch. 108½, par. 5–154.) The majority seems to tie the "act of duty" standard to the nature of the work to which the policeman is assigned, and not to the nature of the work in which he was engaged when injured. I do not agree. The Code defines what is meant by an act of duty. It is "[a]ny act of police duty *inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life.*" (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 108½, par. 5–113.) I do not think that the act of slipping and falling while walking across the street inherently involves a special risk, not ordinarily assumed by a citizen in the ordinary walks of life.

The majority opinion searches for the legislative intent embodied in the statute. However, it fails to discuss an earlier judicial decision and an opinion of this court, which obviously prompted the definition of an act of duty set forth in the present language of the Code. In *People ex rel. Donovan v. Retirement Board of the Policemen's Annuity & Benefit Fund* (1927), 326 Ill. 579, a policeman had been walking across a street in Chicago, as in the case now before us. While doing so he was hit by an automobile. In that case, as in this one, the retirement board argued that the "act of duty" must be a hazardous duty peculiar to police service, and not an act of crossing the street. This court rejected that argument. Almost immediately after the opinion in *Donovan* was filed, the Pension Code was amended to include the language of the present definition of an act of duty, requiring that the act be one inherently involving a special risk not ordinarily assumed by a citizen in the ordinary walks of life. In response to the board's argument in this case that the amendment reflected an intent of the legislature to change that holding, the *amicus* brief in this case argues that the amendment was not in response to this court's decision in *Donovan* because the amendment had been introduced prior to the filing of the opinion. I can-

not accept this argument because the opinion of this court in *Donovan* affirmed an order of the circuit court of Cook County awarding a writ of *mandamus* directing the retirement board to restore the enhanced pension. I find that the amendment was in response to the holding of the circuit court and to this court's holding in *Donovan*, and was meant to change the law as announced in those holdings.

The majority's opinion may prove to be a serious drain on pension funds because, according to the majority opinion, almost all policemen, excepting those engaged in clerical duties, who are injured at work will be entitled to the enhanced pension. Aside from this danger, however, the majority's opinion probably will not create too large a rent in the body of the law. If the legislature does not agree with the majority's holding, it can reject that holding by amending the Code again, as it did in response to this court's holding in *Donovan*. However, I would prefer the holding which I have urged herein because I find such a construction is clearly dictated by the language of the Code and by the fact that this language was added following this court's holding in *Donovan*. If the legislature were to find that the holding for which I urge does not comport with its present sentiments, then that holding likewise could be easily changed by an amendment to the Pension Code.

JUSTICE MILLER joins in this dissent.

JUSTICE MORAN, also dissenting:

Although pension statutes are to be given liberal construction to effect their purpose and the objectives to be accomplished (*Edwards v. Board of Trustees* (1974), 22 Ill. App. 3d 260, 263, *aff'd* (1975), 61 Ill. 2d 330), I disagree with the majority's expansive interpretation of the term "act of duty" and would reverse.

There are two distinct disability provisions in the Pension Code. A policeman who becomes disabled is entitled to "ordinary" disability benefits equal to 50% of his salary at the time the disability occurs. (Ill. Rev. Stat. 1983, ch. 108½, par. 5—155.) If, however, the policeman becomes disabled as a result of an injury suffered "in the performance of an act or acts of duty," he is entitled to receive "duty disability" benefits equal to 75% of his salary. (Ill. Rev. Stat. 1983, ch. 108½, par. 5—144.) The distinction turns on the statutory definition of "act of duty."

Section 5—113 of the Code defines the term "act of duty" to include "[a]ny act of police duty *inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life.*" (Ill. Rev. Stat. 1983, ch. 108½, par. 5—113.) The plain meaning of the statute limits this definition to include only those activities involving *extraordinary* risks peculiar to the performance of police duties. The definition contemplates an act in response to a situation in which the officer faces peculiar hazards by reason of his police duties. Eligibility for "duty disability" benefits is restricted to police officers whose conduct rises above and beyond the call of duty and who become disabled as the result of undertaking extraordinary risks or acts of heroism in the performance of their duties.

The plaintiff's injury was not the result of such an undertaking or risk. The act of crossing a street is not an extraordinary undertaking or risk. It is not, in the language of section 5—113, an act which is "not ordinarily assumed by a citizen in the ordinary walks of life." Allowing the plaintiff in this case to receive duty-disability benefits is not only contrary to the General Assembly's intent as expressly manifested in the Pension Code, it is an affront to those police officers who have or will suffer disabling injuries in the performance of extraordi-

nary acts of courage in discharging their duty to serve and protect the citizens of their community.

JUSTICE RYAN joins in this dissent.