FIFTH DIVISION
February 8, 2008

No. 1-06-2069

| | | |
|---|---|---|
| GEORGE SARKIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF DES PLAINES, THE DES PLAINES | ) | Honorable |
| POLICE PENSION BOARD and NICK CHIARO, EFREN | ) | Stuart Palmer, |
| SALAS, GASTON FREEMAN, ROBERT | ) | Judge Presiding. |
| MUEHLENBACK and LARRY MARKS, as Members and | ) | |
| Trustees of the Des Plaines Police Pension Board, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

JUSTICE GALLAGHER delivered the opinion of the court:

This case involves the administrative review of the decision of the Des Plaines Police

Pension Board (the Board) to deny plaintiff George Sarkis a line-of-duty disability pension after

Sarkis injured his shoulder while lifting a malfunctioning railroad crossing gate.  On appeal to the

circuit court, that court reversed the Board's decision and held that because Sarkis was

dispatched to the scene and was acting for the public's protection, the Board's decision to deny

Sarkis a line-of-duty pension was clearly erroneous.  The Board, its members and the City of Des

Plaines (collectively, defendants) now appeal that ruling.  For the reasons stated below, we

reverse the Board's decision denying Sarkis a line-of-duty disability pension.

BACKGROUND

The facts are largely uncontroverted. Sarkis, a Des Plaines police officer, injured his left shoulder in October 1999. Sarkis was on duty as a patrol officer and was dispatched to a Des Plaines railroad crossing at which the gates were malfunctioning. Des Plaines has about 30 railroad crossings at which traffic is often disrupted when the crossing gates lower in the absence of an approaching train.

Sarkis lifted the railroad gate and inserted a wooden block to keep the gate up and allow traffic to proceed through the crossing. He and other officers keep the wood blocks in their squad cars for that purpose and were instructed how to block the gates in the upright position.

As Sarkis lifted the gate with his left hand, his foot slipped in mud, and the crossing gate dropped onto his left shoulder. Sarkis felt a "pop" in his shoulder, and his left arm became numb. In the following weeks, Sarkis sought medical treatment and was diagnosed with a torn rotator cuff. Sarkis completed one prescribed physical therapy session in December 1999. Sarkis returned to full duty and injured his left shoulder again in July 2000 while jumping over a chain-link fence in pursuit of a suspect. He had surgery on that shoulder in 2003.

The Board also heard the testimony of James Prandini, the Des Plaines chief of police, who stated that Des Plaines officers are often called to crossings to lift the gates when no trains are nearby. Because of the recurrent problem, a group of citizen volunteers known as "Citizens on Patrol" is trained to lift the gates and insert the wood blocks. Other emergency management personnel also lift and prop up the crossing gates and, in addition, Prandini has observed other

people lifting the crossing gates, although he stated that they are "not supposed to" do so.

Regarding the incident in question, Prandini could not confirm that Sarkis was dispatched to the railroad crossing to raise the gate, stating that Sarkis may have encountered the downed gate on his own. Although Sarkis stated that he received instruction on how to prop up malfunctioning railroad gates, Prandini said officers are not shown how to use the wood blocks.

In 2003, Sarkis applied for a line-of-duty disability pension. In a written decision issued on September 14, 2004, the Board found that although Sarkis was injured in both the crossing gate incident and the suspect chase in 2000, his "present injury was caused by the 1999 railroad gate incident." The Board found that Sarkis had a "recurrent, chronic left shoulder rotator cuff tear" that prevented him from performing his job as a police officer.

The Board noted that "non-sworn volunteers and ordinary citizens do frequently hold up railroad gates" and further noted Prandini's testimony that police are not instructed how to raise the gates. The Board concluded that the railroad crossing gate incident did not occur "in the performance of an act of duty," as defined in the Illinois Pension Code.

Sarkis sought administrative review of the Board's decision. On June 7, 2005, the circuit court held that the Board's determination that Sarkis's disability arose from the 1999 railroad gate incident was not against the manifest weight of the evidence. However, the circuit court concluded that, contrary to the Board's decision, Sarkis's raising of the crossing gate constituted the performance of an "act of duty" and that Sarkis therefore was entitled to a line-of-duty disability pension. Defendants now appeal that order.

3

ANALYSIS

The Illinois Pension Code (40 ILCS 5/1-101 *et seq.* (West 2002)) provides different pension benefits depending on the circumstances of a police officer's disability. An officer who is physically or mentally disabled "as the result of sickness, accident or injury incurred in or resulting from the performance of an act of duty" is entitled to a "line-of-duty" pension equal to 65 % of the salary attached to his or her rank. 40 ILCS 5/3-114.1 (West 2002). An officer disabled "as a result of any cause other than the performance of an act of duty" is entitled to a disability pension of 50 % of the applicable salary. 40 ILCS 5/3-114.2 (West 2002). Here, Sarkis filed an application for a "line-of-duty" pension under section 3-114.1 and requested, alternatively, that the Board award him an "off-duty" pension if it determined he was not eligible for the larger pension. The Board found that because Sarkis's injury did not occur in the performance of his police duty, he should receive an "off-duty" disability pension under section 3-114.2.

The Board and the City of Des Plaines have filed separate briefs on appeal, and the City, in particular, argues at length that the circuit court applied an incorrect standard of review. However, in an appeal from a circuit court's judgment in an administrative review proceeding, this court reviews the decision of the administrative agency, not the decision of the circuit court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531, 870 N.E.2d 273, 292 (2006).

Although the testimony of Sarkis and Prandini was slightly contradictory, the relevant facts are not in dispute. As to what standard of review this court should apply to the Board's decision, defendants contend that this appeal presents a mixed question of law and fact, *i.e.*, the

legal effect of the facts presented regarding Sarkis's injury, and that the Board's decision is to be disturbed only if clearly erroneous. Sarkis responds that our review should be *de novo* because it involves the interpretation of the statutory term "act of duty."

We therefore must determine whether this case involves the interpretation of the statutory term "act of duty" or whether it requires our examination of the legal effect of a given set of facts, which presents a mixed question of fact and law. See *Illinois Landscape Contractors Ass'n v. Department of Labor*, 372 Ill. App. 3d 912, 920-21, 866 N.E.2d 592, 600 (2007) (a mixed question of law and fact occurs when reviewing court is asked if facts satisfy statutory standard or if the rule of law as applied to the established facts is violated). In cases involving whether an officer's disability arose from an "act of duty," this court has held that, when the facts are undisputed, the interpretation of the term "act of duty" in the Pension Code is an issue of statutory construction to be reviewed *de novo*. *Fedorski v. Board of Trustees of Aurora Police Pension Fund*, 375 Ill. App. 3d 371, 372-73, 873 N.E.2d 15, 17 (2007); *Alm v. Lincolnshire Police Pension Board*, 352 Ill. App. 3d 595, 598, 816 N.E.2d 389, 390 (2004); *White v. City of Aurora*, 323 Ill. App. 3d 733, 735, 753 N.E.2d 1244, 1246 (2001).

Because we agree that this appeal requires us to interpret the language of the statute, we apply a *de novo* standard of review to the Board's decision. However, we remain mindful that although a reviewing court is not bound by an agency's interpretation of a statute, the agency's reading "remains relevant where there is a reasonable debate about the meaning of the statute." *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 142, 849 N.E.2d 349, 358 (2006).

We therefore proceed to the merits of this appeal. A disability for which an officer may

receive a "line of duty" pension must result from an "act of duty." That phrase is defined as:

> "[a]ny act of police duty inherently involving special risk, not ordinarily
> assumed by a citizen in the ordinary walks of life, imposed on a policeman by the
> statutes of this State or by the ordinances or police regulations of the city in
> which this Article is in effect or by a special assignment; or any act of heroism
> performed in the city having for its direct purpose the saving of the life or property
> of a person other than the policeman." (Emphasis added.) 40 ILCS 5/5-113
> (West 2002).

Because no act of heroism occurred here, nor is it asserted that raising the railroad crossing gates was an act imposed by statute, ordinance, regulation or special assignment, our analysis involves the italicized portion of section 5-113 and focuses on whether Sarkis's action involved a special risk not ordinarily assumed by citizens.

As an initial consideration, we reject Sarkis's assertion that the fact that he was "on duty as a patrol officer at the time he was lifting the gate is of primary importance." An officer does not perform an "act of duty" merely by being on duty at the relevant time. See, *e.g.*, *Morgan v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 172 Ill. App. 3d 273, 276-77, 526 N.E.2d 493, 496 (1988) (officer not entitled to line-of-duty pension for injury sustained when desk chair rolled out from under him as he completed police report). The performance of an "act of duty" is not synonymous with an action taken by an officer on duty. In *Harroun v. Addison Police Pension Board*, 372 Ill. App. 3d 260, 264, 865 N.E.2d 273, 277 (2007), a police officer, although off duty, performed an "act of duty" in attempting to apprehend a person he observed

6

trying to break into the home of his neighbor. See also *English v. Village of Northfield*, 172 Ill. App. 3d 344, 348, 526 N.E.2d 588, 591 (1988) (board's decision that police officer was not entitled to line-of-duty pension for back injury resulting from various on-duty and off-duty incidents was not contrary to manifest weight of the evidence).

The Illinois Supreme Court has found that the term "special risk" used in section 5-113 is not limited to inherently dangerous activities. *Johnson v. Retirement Board of Policemen's Annuity & Benefit Fund*, 114 Ill. 2d 518, 521, 502 N.E.2d 718, 719 (1986). In *Johnson*, the officer was performing his assigned traffic control duties when he crossed the street to respond to a citizen's request for help, falling on wet pavement and incurring injuries that resulted in a paralyzed right hand. *Johnson*, 114 Ill. 2d at 520, 502 N.E.2d at 719. The retirement board denied the officer's request for disability benefits for an injury sustained in the line of duty, reasoning that the injury was not sustained by assuming a "special risk" but simply was "traversing a street" as any other person would. *Johnson*, 114 Ill. 2d at 520, 502 N.E.2d at 719.

The supreme court rejected that assertion, holding that the touchstone of an "act of duty" is not whether the officer is performing an act unique to his or her occupation but, rather, the capacity in which the officer is acting. *Johnson*, 114 Ill. 2d at 522, 502 N.E.2d at 720. Affirming the decision of the appellate court, which had disagreed with the retirement board, the supreme court stated:

> "In the case at bar, at the time of his disabling injury, the plaintiff was discharging
> his sworn duties to the citizens of Chicago by responding to the call of a citizen to
> investigate an accident. There is no comparable civilian occupation to that of a

traffic patrolman responding to the call of a citizen." *Johnson*, 114 Ill. 2d at 522,

502 N.E.2d at 720.

See also *Johnson v. Retirement Board of Policemen's Annuity & Benefit Fund*, 137 Ill. App. 3d

546, 484 N.E.2d 1250 (1985).

The supreme court concluded in *Johnson* that the officer was injured while responding to

a citizen's request for help, which was an act of duty, noting that the officer had no choice but to

respond. *Johnson*, 114 Ill. 2d at 522-23, 502 N.E.2d at 720. Two separate dissents in *Johnson*,

however, criticized the majority's interpretation of an "act of duty" as overly broad. The

dissenting justices construed the officer's act more narrowly, stating that the officer fell while

crossing the street, an act that involved no special risk not faced by citizens in everyday life.

*Johnson*, 114 Ill. 2d at 523-27, 502 N.E.2d at 721-22 (Ryan, J., and Moran, J., dissenting).

In keeping with the majority in *Johnson*, this court held in *Alm* that a police officer

assigned to bicycle patrol was entitled to a line-of-duty pension for a disabling injury when he had

knee surgery after experiencing pain while pedaling the bike. *Alm*, 352 Ill. App. 3d at 596, 816

N.E.2d at 390. Noting *Johnson*, the court in *Alm* held that a line-of-duty benefit is not available

"if the officer is performing a function that civilians commonly perform." *Alm*, 352 Ill. App. 3d at

600, 816 N.E.2d at 393, citing *Morgan*, 172 Ill. App. 3d at 276-77, 526 N.E.2d at 496.

*Alm* held that the bike patrol involved "special risk" under section 5-113 because the

officer was required to ride the bike at night, carrying between 25 and 30 pounds of equipment,

and was required to patrol and face "dangerous encounters with unsavory elements of society,"

which the court concluded "has no clear counterpart in civilian life." *Alm*, 352 Ill. App. 3d at 601,

816 N.E.2d at 394. The court in *Alm* rejected the characterization of the officer's act as merely riding a bicycle, noting the observation in *Johnson* that "the proper focus is on the *capacity* in which the officer is acting, not the precise act leading to injury." (Emphasis in original.) *Alm*, 352 Ill. App. 3d at 602, 816 N.E.2d at 395.

Alluding to the language of *Alm*, the City contends that Sarkis's injury was not sustained as the result of a "dangerous encounter." However, a review of the factual situations presented in *Alm* and *Johnson* reveals that an officer need not grapple with a criminal to perform an "act of duty." The supreme court in *Johnson* rejected such a restrictive view of the term "act of duty," noting that it "could discourage police officers from the dedicated and enthusiastic performance of their duties." *Johnson*, 114 Ill. 2d at 523, 502 N.E.2d at 720.

In *Johnson* and *Alm*, the courts speculated whether the officer faced a risk of harm to which ordinary citizens were not exposed, both answering that hypothetical question in the affirmative. *Johnson*, 114 Ill. 2d at 522, 502 N.E.2d at 720; *Alm*, 352 Ill. App. 3d at 600, 816 N.E.2d at 393. The instant case does not require such speculation because it is undisputed that members of the Des Plaines community performed the same physical act that led to Sarkis's injury.

The existence of a civilian counterpart was discussed in *White*, in which the officer was denied line-of-duty disability benefits for an injury after he slipped while exiting his vehicle to place a parking ticket on a car's windshield. *White*, 323 Ill. App. 3d at 734, 753 N.E.2d at 1245. Relying on *Morgan*, the court held in *White* that the risk of the officer's injury also was encountered by community service officers who enforce parking regulations and by citizens who

exit cars to place sales flyers on windshields, for example. *White*, 323 Ill. App. 3d at 737, 753 N.E.2d at 1247; but see *White*, 323 Ill. App. 3d at 738-41, 753 N.E.2d at 1248-50 (O'Malley, J., dissenting) (injury in *White* analogous to *Johnson*).

Sarkis compares his actions to those of the officers in *Johnson* and *Alm*. He asserts that in lifting the crossing gate, he was performing official functions of maintaining control of the railroad crossing intersection and alleviating traffic congestion. The evidence presented to the Board was unclear whether Sarkis was called to the scene or whether he came upon the lowered crossing gate himself. Nevertheless, whether Sarkis was dispatched to the crossing is not wholly dispositive.

The City asserts that it is unclear whether Sarkis's presence at the crossing was necessary to alleviate traffic congestion. The City argues that "the evidence shows a lack of connection between lifting the railroad gate * * * * and any traffic that might have been in the vicinity." We do not agree with the City that a disruption to traffic was required for Sarkis's action to be classified as an "act of duty" under section 5-113, nor do we find that Sarkis must be responding to an emergency call or be acting under a general or special police order. Once Sarkis arrived at the railroad crossing, no matter his reason for being there or the state of the surrounding traffic, his act of lifting the crossing gate exposed him to a physical risk.

We conclude that Sarkis's action met the definition of an "act of duty" as set out in section 5-113 of the Pension Code. An "act of duty" must involve a risk that is "not ordinarily assumed by a citizen in the ordinary walks of life." 40 ILCS 5/5-113 (West 2002). A line-of-duty pension is awarded to reflect the risks faced by an officer who is required to act and to reflect that

those dangers are different from those encountered by officers who, while injured, are harmed in the performance of an act that is not unique to their profession. Therefore, the key consideration is the risks that are faced by an officer who is engaged in the duties of his job.

Defendants rely heavily on the fact that citizens in Des Plaines also raised crossing gates that were not working properly. It is true that the "Citizens on Patrol" essentially were deputized with that responsibility and trained as to the task. Indeed, the manual raising of the railroad gates in Des Plaines appears to be a frequent and somewhat informal occurrence. Even so, the action taken by Sarkis was not a risk borne by a typical citizen. Sarkis was not injured in an act that citizens "commonly" perform, to use the term employed in *Alm*. See *Alm*, 352 Ill. App. 3d at 600, 816 N.E.2d at 393.

The City contends that Sarkis's action is distinguishable from the "speedy, emergency-like response" of the officer in *Johnson*, who was reacting to a citizen's request for help. However, in doing so, the City contrasts the officer in *Johnson* with an "ordinary pedestrian." Sarkis was not an "ordinary pedestrian" walking on the streets of Des Plaines. Whether he was called to the scene or not, Sarkis, as a police officer, was required to serve and protect the public and respond to situations involving public safety. See *Johnson*, 114 Ill. 2d at 522, 502 N.E.2d at 720 ("unlike an ordinary citizen, the policeman has *no* option as to whether to respond; it is his duty to respond regardless of the hazard ultimately encountered" (emphasis in original)).

The City further asserts that the railroad, and not the Des Plaines police, bears the legal responsibility to maintain the crossing gates. However, we cannot agree with the City that the duties of the police are limited by the responsibilities of another party. For instance, a private

security firm may have a contractual duty to respond to an alarm sounding at a particular property. However, we could not conclude that, given that arrangement, the police would have no duty to respond to a call for help at the property or to aid a citizen whom an officer observed in peril. A police officer has an overarching responsibility to act in certain circumstances, which the "line-of-duty" requirement is intended to recognize. See generally *Everitt v. General Electric Co.*, 932 A.2d 831, 844 (N.H. 2007) (discussing official immunity for police officers and observing that the "public safety entrusted to police officers demands that they remain diligent in their duties and independent in their judgments").

We conclude that physically raising a railroad crossing gate is not an act performed by an ordinary person in his or her typical day, even in the unique circumstances of this case. Although Prandini testified that motorists other than those in the volunteer group would lift crossing gates, it was not established that those citizens propped the gates up with wooden blocks at their own discretion. By lifting the railroad crossing gate to insert the wood block, Sarkis assumed a special risk that, although faced by some citizens of Des Plaines, was not generally assumed by the public. Therefore, the act that caused Sarkis's injury was an "act of duty" under section 5-113 of the Pension Code. Because it is not disputed that the act resulted in Sarkis's disability, Sarkis should receive a line-of-duty disability pension pursuant to section 3-114.1 of the Pension Code.

In closing, though our review of the Board's decision is *de novo*, we question the Board's exclusive reliance on *Robbins v. Board of Trustees of the Carbondale Police Pension Fund*, 177 Ill. 2d 533, 544, 687 N.E.2d 39, 45 (1997), which discusses the classification of an officer's stress as a psychological disability and promotes the awarding of a line-of-duty pension for stress if the

12

condition results from the performance of an act of duty. *Robbins* and other precedent involving job-related stress, while well reasoned, are simply inapposite to the instant case, which centers on a physical act that caused injury. Although several of the cases on which we have relied were issued after the Board decided Sarkis's case in 2004, the Board's written decision makes no reference to the Illinois Supreme Court's analysis in *Johnson* (decided in 1986), the appellate court decision in *White* (2001), or other decisions that are more germane to Sarkis's situation. It is not clear whether the Board was unaware of this more pertinent and recent authority or simply chose to disregard it.

CONCLUSION

Because Sarkis's act involved a special risk "not ordinarily assumed by a citizen in the ordinary walks of life," Sarkis was entitled to a line-of-duty disability pension under section 3-114.1 of the Pension Code. Accordingly, the Board's decision to the contrary is reversed.

Circuit court decision affirmed; Board decision reversed.

TULLY and O'MARA FROSSARD, JJ., concur.