# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Summers v. Retirement Board of the Policemen's Annuity & Benefit Fund*,
2013 IL App (1st) 121345

| | |
|---|---|
| Appellate Court Caption | BRUCE SUMMERS, Plaintiff-Appellee, v. THE RETIREMENT BOARD OF THE POLICEMEN'S ANNUITY AND BENEFIT FUND OF THE CITY OF CHICAGO, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-12-1345 |
| Filed | April 18, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A police officer who delivered equipment and supplies to police facilities was properly awarded ordinary disability benefits rather than duty disability benefits by the retirement board for the back injury he suffered while handling a box during a delivery, since his job did not involve any "special risks" and the injury did not occur in the performance of an "act of duty" for purposes of the Pension Code. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-35001; the Hon. Michael B. Hyman, Judge, presiding. |
| Judgment | Circuit court decision reversed; board decision affirmed. |

| Counsel on Appeal | David R. Kugler, of David R. Kugler & Associates Ltd., of Chicago, for appellant. |
|---|---|
| | Ralph J. Licari, of Ralph J. Licari & Associates, Ltd., of Chicago, for appellee. |
| Panel | JUSTICE EPSTEIN delivered the judgment of the court, with opinion. Presiding Justice Lavin and Justice Pucinski concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff Bruce Summers, a police officer with the Chicago police department (CPD), applied for disability benefits after he was injured while performing an assigned duty of lifting and handling police supplies. Defendant Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (the Board) conducted an evidentiary hearing regarding the application. The Board determined that Summers was disabled but denied duty disability benefits and instead awarded ordinary disability benefits at 50% of his salary. Summers filed a petition for administrative review. The circuit court of Cook county reversed the Board's order and awarded Summers duty disability benefits at 75% of his salary. The Board filed this appeal.

¶ 2    For the reasons stated herein, we reverse the ruling of the circuit court and affirm the decision of the Board.

¶ 3                              BACKGROUND

¶ 4    The Board conducted an evidentiary hearing on August 25, 2011, regarding Summers' disability benefits application. During the hearing, Summers testified he became a police officer in 1993 and worked for the CPD equipment and supply section beginning in 2006. Summers' job responsibilities included loading and unloading a box truck and making deliveries of equipment and supplies to police facilities. Summers testified that "we were delivering equipment and supplies of up to two to three hundred boxes per day and the boxes were weighing on average between 75 and 100 pounds per box." Summers stated that the "truck crew" made deliveries and pickups in accordance with schedule provided by his supervisor. While performing his duties, Summers wore a firearm and was in uniform. He drove a blue and white police truck with "Chicago Police" written on its sides.

¶ 5    On May 5, 2010, a box fell out of Summers' hands as he was lifting it in the truck to hand it to his partner who was on the ground placing the items in a cart. Summers testified that his arm "went kind of dead, and [he] felt something in between [his] neck and [his] shoulder. [He] was in immediate pain." This incident occurred the day before a month-long scheduled furlough. After taking the furlough, Summers went to the CPD medical section

on approximately June 21, 2010. On August 21, 2010, Summers had an MRI that showed degenerative disk changes and an "extruded fracture on the right side." Summers later "received a three (3) level fusion, anterior diskectomy [*sic*] at C3-C4, C4-C5, and C5-C6."

¶ 6    Peter Orris, M.D., the Board's consulting physician, testified that he reviewed Summers' medical file, including the MRI report. According to Dr. Orris' testimony, the MRI showed findings described as degenerative changes in the neck area. Dr. Orris stated that "[b]ased on the history, the medical records here, it would appear likely that some of those degenerative changes predated the May accident and that the May accident was the straw that broke the camel's back with respect to this situation." Dr. Orris acknowledged that most people suffer from degenerative disk disease as part of the aging process, but testified that "[t]his is a much more substantial disease in this area than you would expect in somebody of his age and his conditioning, et cetera."

¶ 7    On September 15, 2011, after reviewing the testimony of Summers and Orris, as well as medical reports included in the record, the Board entered an order including its findings of fact and conclusions of law. The order provided, among other things, that: (i) Summers was disabled; (ii) "Summers, while on duty and performing assigned tasks of delivery supplies, equipment, furniture, radios, etc. to police facilities, was not in the performance of an 'Act of Duty' *** as such is defined in the Act"; and (iii) accordingly, Summers' application seeking duty disability benefits was denied and he was awarded ordinary disability benefits. The Board specifically stated that the "Board having found Summers disabled, not as the result of an 'Act of Duty' benefit, does not need to and does not address any medical issue as to what if any impact Summers' pre-existing condition may have on his current disability."

¶ 8    Summers filed a petition for administrative review. The circuit court entered an order on April 12, 2012 finding the "Board's decision in denying Petitioner duty disability benefits was clearly erroneous." The court reversed the Board's decision and awarded Summers duty disability benefits at 75%. The circuit court's order provides that the Board "has waived its right to address the issue of pre-existing medical injuries in its brief." The Board filed this appeal.

¶ 9                                   ANALYSIS

¶ 10    The Board contends on appeal that Summers was injured while on duty, but his injury was not the result of an "act of duty" as defined in section 5-113 of the Illinois Pension Code (the Code). 40 ILCS 5/5-113 (West 2010). Only an injury that was incurred in the performance of an act of duty could entitle Summers to "duty" disability at an amount equal to 75% of his salary. See 40 ILCS 5/5-154 (West 2010). If Summers became disabled as the result of any cause other than an injury incurred in the performance of an act of duty, he would be entitled to "ordinary" disability at an amount equal to 50% of his salary. See 40 ILCS 5/5-155 (West 2010). The Board asserts that its decision that Summers' injury was not the result of an act of duty was not clearly erroneous and thus the circuit court should not have reversed.

¶ 11    The Board also contends that it never reached the "issues pertaining to pre-existing conditions" relevant to determining whether Summers would be entitled to *duty* disability

-3-

benefits at the 75% level or at a reduced 50% level, pursuant to section 5-154(a)(i) (40 ILCS 5/5-154(a)(i) (West 2010)). Thus, the Board asserts, the circuit court's "decision affirmatively granting duty disability benefits" was beyond the court's subject matter jurisdiction and "should be treated as void."

¶ 12                              Standard of Review

¶ 13     The first issue is whether Summers became disabled as the result of an injury incurred in the performance of an "act of duty." Illinois courts addressing this issue have applied varying standards of review. Some courts have considered this issue a mixed question of law and fact and have applied a "clearly erroneous" standard. See, *e.g.*, *Merlo v. Orland Hills Police Pension Board*, 383 Ill. App. 3d 97, 100 (2008). In cases where the facts are undisputed and the sole issue is the meaning of "act of duty," other courts have applied a *de novo* standard of review. See, *e.g.*, *Sarkis v. City of Des Plaines*, 378 Ill. App. 3d 833, 836-37 (2008); *Alm v. Lincolnshire Police Pension Board*, 352 Ill. App. 3d 595, 598 (2004). Some courts have even considered this question to be an issue of fact, requiring application of a "manifest weight of the evidence" standard. See, *e.g.*, *Mingus v. Board of Trustees of the Police Pension Fund*, 2011 IL App (3d) 110098, ¶ 11.

¶ 14     The facts here are undisputed. Because this appeal requires us to interpret the language of the "act of duty" statute, we apply a *de novo* standard of review to the Board's decision. *Sarkis*, 378 Ill. App. 3d at 836-37. However, we would reach the same conclusion in this case regardless of the applicable standard of review.

¶ 15     Appellate review of the decision of an administrative agency is of the agency's decision and not the decision of the circuit court. *Thompson v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 379 Ill. App. 3d 498, 503 (2008).

¶ 16                        Illinois Pension Code Provisions

¶ 17     "Act of duty" is defined in section 5-113 of the Code as follows:

"Any act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life, imposed on a policeman by the statutes of this State or by the ordinances or police regulations of the city in which this Article is in effect or by a special assignment; or any act of heroism performed in the city having for its direct purpose the saving of the life or property of a person other than the policeman." 40 ILCS 5/5-113 (West 2010).

¶ 18     Section 5-154 of the Code–addressing "duty disability benefit"–provides, in part, as follows:

"An active policeman who becomes disabled on or after the effective date as the result of injury incurred on or after such date in the performance of an act of duty, has a right to receive duty disability benefit during any period of such disability for which he does not have a right to receive salary, equal to 75% of his salary, as salary is defined in this Article, at the time the disability is allowed; *** provided, however, that:

(i) If the disability resulted from any physical defect or mental disorder or any

-4-

disease which existed at the time the injury was sustained, or if the disability is less than 50% of the total disability for any service of a remunerative character, the duty disability benefit shall be 50% of salary as defined in this Article." 40 ILCS 5/5-154 (West 2010).

Section 5-154 thus provides for a "duty disability benefit" equal to 75% of salary when a policeman becomes disabled in the performance of an "act of duty." However, "the officer will be given a duty disability pension of 50% of his salary if the disability 'resulted from' the preexisting condition, notwithstanding the effect the on-duty injury may have had on the preexisting condition." *Samuels v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 289 Ill. App. 3d 651, 662 (1997).

¶ 19 Section 5-155 of the Code–addressing "ordinary disability benefit"–provides, in part, as follows:

"A policeman less than age 63 who becomes disabled after the effective date as the result of any cause other than an injury incurred in the performance of an act of duty, shall receive ordinary disability benefit during any period or periods of disability exceeding 30 days ***.

   ***

Ordinary disability benefit shall be 50% of the policeman's salary, as salary is defined in this Article, at the time the disability occurs." 40 ILCS 5/5-155 (West 2010).

Section 5-155 provides that, absent disability resulting from injury in the performance of an act of duty, an officer receives ordinary benefits equal to 50% of the officer's salary.[1]

¶ 20 The Board awarded *ordinary* disability benefits at 50% of Summers' salary. The circuit court reversed and ordered *duty* disability benefits at a 75% level. The threshold issue we consider is whether the Board erred in its decision to award Summers ordinary disability benefits at a 50% level. Such inquiry turns on the question of whether Summers sustained his injury in the performance of an act of duty.

¶ 21                                     Act of Duty

¶ 22 The Board's position is that Summers' injury was not incurred when he was engaged in an act of duty. The Board contends that "[i]f Summers is entitled to duty disability benefits just because he was doing his assigned job, then the definition provided by the Legislature is a nullity and every injury suffered by an officer who was working when injured could,

---

[1] A duty disability benefit is payable until the officer reaches age 63 or is retired by operation of law. 40 ILCS 5/5-154(c) (West 2010). An ordinary disability benefit also ceases when the officer reaches age 63 or retires. 40 ILCS 5/5-155 (West 2010). "However, in addition, section 5-155 further provides that the payment of the ordinary disability benefit 'shall not exceed, in the aggregate, throughout the total service of the policeman, a period equal to one-fourth of the service rendered to the city prior to the time he became disabled, not more than 5 years." *Cole v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 396 Ill. App. 3d 357, 368 (2009); see 40 ILCS 5/5-155 (West 2010).

arguably, qualify for duty benefits."

¶ 23　　The Board posits that Summers was not "involved in any task involving special risk or any activity unique to being a police officer and in fact was doing exactly what any delivery truck driver does all day long every working day." The Board also argues that the "record is clear that there was no emergency involved, and in fact Summers expressly stated that he did the same job every day according to a schedule." Because Summers "was not involved in any special risk situation or performing any function requiring his special attention over and above the activities of a private citizen engaged in the same task," the Board contends that Summers is not entitled to duty disability benefits.

¶ 24　　According to Summers, his assigned job "to deliver boxes of police equipment, furniture, radios, and other supplies to police facilities in a clearly marked police vehicle" involved "an element of special risk that citizens do not commonly perform." He contends that "[t]here is a reason only sworn police officers are assigned to the Equipment and Supply Section ***, and that the officers assigned to the unit are in *** uniform and armed with a firearm." Arguing that there did not need to be an emergency or "inherently dangerous activities" for Summers to obtain duty disability benefits, he asserts that his duties involved "special risk" and that the Board cannot compare his duty as a police officer "to that of a UPS or FEDX [*sic*] driver as the Board insultingly suggests."

¶ 25　　The seminal case interpreting "act of duty" is *Johnson v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 114 Ill. 2d 518 (1986). In *Johnson*, the Illinois Supreme Court considered whether an officer was entitled to duty disability benefits. While at his assigned traffic control post, a citizen at the corner of the intersection called to the officer for assistance regarding a traffic accident. *Id.* at 520. The officer suffered injuries when he slipped on the wet pavement and fell as he crossed the intersection to investigate and respond. *Id.*

¶ 26　　The supreme court rejected the pension board's argument that the term "special risk" in the "act of duty" statute only encompasses "inherently dangerous" activities, finding such interpretation to be "overly restrictive and unrealistic." *Id.* at 522-23. The court stated that "[p]olice officers assigned to duties that involve protection of the public discharge those duties by performing acts which are similar to those involved in many civilian occupations," such as driving a car, walking up stairs or crossing a street. *Id.* at 521-22. The court noted that "[w]hen a policeman is called upon to respond to a citizen, he must have his attention and energies directed towards being prepared to deal with any eventuality." *Id.* at 522. The court further noted that, unlike any ordinary citizen, "the policeman has *no* option as to whether to respond." (Emphasis in original.) *Id.*

¶ 27　　The *Johnson* court observed that section 5-154 of the Code, which confers the right to duty disability benefits, does not require that an officer be injured *by* an act of duty. "Rather, the duty disability is awarded when an officer is 'disabled *** as the result of injury incurred *** in the performance of an act of duty.'" (Emphasis in original.) *Id.* Observing that "[t]he crux is the capacity in which the police officer is acting," the court held that "the action of the plaintiff in crossing the intersection to respond to a citizen's call for assistance constitute[d] an 'act of duty' as defined in the Illinois Pension Code." *Id.* at 522-23.

¶ 28 Three justices dissented in *Johnson*, filing two separate dissents. *Id.* at 523 (Ryan, J., dissenting, joined by Miller, J.); *id.* at 525 (Moran, J., dissenting, joined by Ryan, J.). In both dissents, the justices disagreed with the majority's conclusion that the officer was engaged in an act of duty. *Id.* at 523 (Ryan, J., dissenting, joined by Miller, J.); *id.* at 526 (Moran, J., dissenting, joined by Ryan, J.). In one dissent, the justices took issue with "[t]he majority seem[ing] to tie the 'act of duty' standard to the nature of the work to which the policeman is assigned, and not to the nature of the work in which he was engaged when injured." *Id.* at 524 (Ryan, J., dissenting, joined by Miller, J.). In the other dissent, the justices disagreed with the majority's "expansive" interpretation of "act of duty," noting that the "plain meaning of the statute limits this definition to include only those activities involving *extraordinary* risks peculiar to the performance of police duties." (Emphasis in original.) *Id.* at 526 (Moran, J., dissenting, joined by Ryan, J.).

¶ 29 Following the guidance of the *Johnson* majority, courts have examined the capacity in which the officer was acting while injured in making determinations regarding whether the act was one "inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life," under section 5-113 (40 ILCS 5/5-113 (West 2010)). Courts have concluded that an officer was disabled as a result of an injury incurred in the performance of an act of duty under a number of circumstances. In *Wagner v. Board of Trustees of the Police Pension Fund*, 208 Ill. App. 3d 25, 26 (1991),[2] an officer injured his knee three times over the course of six months: while escorting a resisting prisoner up a flight of stairs; when a rotted porch plank gave way and his leg fell through while he was serving a notice to appear; and twisting his leg while stepping into a culvert offset when responding to a disturbance. The *Wagner* court ruled that the officer's disability was duty-related, noting that serving notices to appear is an act generally unique to police officers and that the officer's injury while responding to a disturbance was "closely analogous" to the fact situation in *Johnson*. *Id.* at 29-30.

¶ 30 In *Alm v. Lincolnshire Police Pension Board*, 352 Ill. App. 3d 595, 596 (2004), an officer assigned to a police bicycle patrol unit experienced pain and swelling in his knee while pedaling his bicycle; he had not fallen or had any other sort of accident. The appellate court concluded that the officer was "performing in a capacity that amounted to an act of duty" because, while on patrol, the officer "faced risks not ordinarily encountered by civilians." *Id.* at 601. Specifically, the officer was required to ride his bicycle at night over varying terrain, while carrying a significant amount of additional gear; the risks also included "falls and collisions as well as dangerous encounters with unsavory elements of society." *Id.*

---

[2]Different provisions of the Pension Code apply to police pensions funds for cities with a population of less than 500,000–article III of the Pension Code–and cities with a population over 500,000–article V of the Pension Code. Compare 40 ILCS 5/5-154 (West 2010), with 40 ILCS 5/3-114.1 (West 2010). However, our supreme court has stated that the "act of duty" definition contained in article V of the Pension Code applies to the use of that term in article III. See *Robbins v. Board of Trustees of the Carbondale Police Pension Fund*, 177 Ill. 2d 533, 540 (1997). Therefore, cases involving pension funds in Illinois cities other than Chicago are instructive for purposes of our analysis.

¶ 31    In *Sarkis v. City of Des Plaines*, 378 Ill. App. 3d 833, 834 (2008), an on-duty patrol officer was dispatched to a railroad crossing at which the gates were malfunctioning. As the officer lifted the gate with his hand, his foot slipped and the gate dropped on his shoulder. *Id*. The pension board concluded that the officer's injury did not occur in the performance of an act of duty, noting that " 'non-sworn volunteers and ordinary citizens do frequently hold up railroad gates.' " *Id.* at 835. The appellate court affirmed the circuit court's reversal, concluding that "physically raising a railroad crossing gate is not an act performed by an ordinary person in his or her typical day, even in the unique circumstances of this case." *Id.* at 841.

¶ 32    In *Merlo v. Orland Hills Police Pension Board*, 383 Ill. App. 3d 97, 98 (2008), a patrol officer injured his back when attempting to remove parking blocks after responding to a call reporting juveniles stacking the blocks in a parking lot. The appellate court rejected the pension board's contention that the officer's act did not involve any special risks because the village public works department, a civilian office, had a duty to remove the parking blocks. *Id.* at 102-03. The court noted that the employees of the public works department, unlike the officer, "are not required to respond to a citizen's call to confront mischievous juveniles or immediately eliminate the resulting safety hazards to the general public." *Id.* at 103.

¶ 33    In *Jones v. Board of Trustees of the Police Pension Fund*, 384 Ill. App. 3d 1064, 1065 (2008), a police officer driving a police van while on routine patrol was injured in a motor vehicle accident. The pension board argued that the officer only encountered the "general risk attendant to driving a car." *Id.* at 1073. The appellate court disagreed, noting that "even if driving a car involves only an ordinary risk, [the officer] was acting in a capacity that involved special risk when he was injured–routine patrol." *Id.*

¶ 34    In *Rose v. Board of Trustees of the Mount Prospect Police Pension Fund*, 2011 IL App (1st) 102157, ¶ 1, an officer was injured in an automobile accident while on patrol and driving in his squad car. The pension board argued that the officer's injuries were not incurred in the performance of an "act of duty." *Id.* ¶ 64. The appellate court disagreed, concluding that even if, as the pension board found, the petitioner had completed his investigation of a missing juvenile, the officer "was nevertheless performing patrol duties, which inherently involve special risks not ordinarily assumed by regular citizens in their daily lives." *Id.* ¶ 78.

¶ 35    In *Mingus v. Board of Trustees of the Police Pension Fund*, 2011 IL App (3d) 110098, ¶ 4, an officer was on patrol in his squad car when he encountered a vehicle that had gone off the road. The officer was injured while pushing the vehicle out of a snowbank by hand and back onto the roadway with the assistance of two civilians who had stopped to help. *Id.* ¶ 6. The pension board awarded a nonduty disability pension, finding that the officer's testimony was not credible regarding the safety hazard posed by the vehicle and the need for immediate action as opposed to, for example, calling a tow truck. *Id.* ¶ 7. The appellate court set aside the board's ruling, concluding that, as opposed to an ordinary citizen, the police officer was "required to stop and attend to the situation." *Id.* ¶ 14.

¶ 36    In other cases, courts have found that an officer's injuries were not incurred in the performance of an act of duty. For example, in *Olson v. City of Wheaton Police Pension*

*Board*, 153 Ill. App. 3d 595, 599 (1987), a police officer experienced migraine headaches, which he testified were caused by job-related stress resulting from differences in management style between him and his superior, the fact that charges were brought against him and the fact that he was assigned as a patrol officer even though he had attained the rank of sergeant. The appellate court concluded that "[w]e cannot say that plaintiff was disabled while 'he was engaged in activities related to his duty as a police officer to protect and serve the public' [citation]," noting that "[c]ivilians regularly suffer stress in their employment resulting from conflicts with their superiors, complaints that are filed against them in connection with their jobs, and the assignment of tasks which they deem unsuitable for their position." *Id.* at 599-600.

¶ 37    In *Morgan v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 172 Ill. App. 3d 273 (1988), an officer on duty in a police station rose from his chair to hand items of identification to a citizen who had entered the station to file a police report. When the officer then attempted to sit down in the chair, the chair rolled away and the officer struck the chair and/or floor with his head, neck and back. *Id.* The appellate court noted that "[u]nlike the supreme court's conclusion regarding the duties of a traffic patrolman, we cannot conclude that there is no comparable civilian occupation to that of a policeman filling out a police report." *Id.* at 276. The court affirmed the denial of duty disability benefits, concluding that "we cannot say that completing police reports, albeit a function peculiar to police officers, inherently involves special risk not ordinarily assumed by a citizen in the ordinary walks of life." *Id.* at 276-77.

¶ 38    In *White v. City of Aurora*, 323 Ill. App. 3d 733, 734 (2001), an officer assigned to patrol an area and instructed to write more parking citations was injured when he slipped exiting his squad car to place a citation on an illegally parked vehicle. The appellate court concluded that "writing a parking ticket and placing it on a windshield without the driver being present is more like the clerical act at issue in *Morgan* than the responsive police action at issue in *Johnson*." *Id.* at 737. Further, the court noted that, unlike the officer in *Johnson*, this officer was performing an act performed by non-police officers, *i.e.*, placing a traffic citation on a vehicle windshield. *Id.*

¶ 39    In *Fedorski v. Board of Trustees of the Aurora Police Pension Fund*, 375 Ill. App. 3d 371, 372 (2007), a police officer assigned to work as a plainclothes investigator was functioning as a "street level" evidence technician on the day he was injured in an automobile accident. As the officer and two investigators left a jail and headed toward the police station where the officer was to complete tasks related to the investigation, the vehicle in which he was traveling was struck from behind at a red light. *Id.* On appeal, the court concluded that plaintiff was not performing an act of duty when he was injured. *Id.* at 375. The court noted that "whether or not plaintiff was 'performing the task of an evidence technician' when the accident occurred, he was not acting in a capacity that entailed any special risk at that particular time." *Id.* The court further noted that "[n]one of the cases hold that the title of an officer's duty assignment is determinative of the capacity in which he is acting. Rather the cases illustrate that the proper focus is on the particular activities the officer is engaged in when he or she is injured." *Id.* at 375-76.

¶ 40    In *Filskov v. Board of Trustees of the Northlake Police Pension Fund*, 409 Ill. App. 3d

-9-

66, 68 (2011), a police officer whose assigned duty was to patrol the streets looking for gang activity walked with two other officers to his police vehicle to resume patrol. While standing outside of the vehicle moving items from the rear seat, the officer was injured when one of the other officers inadvertently put the car in drive and ran over his foot. *Id*. The appellate court found that the pension board did not clearly err in finding that the incident did not involve a special risk not ordinarily assumed by citizens in ordinary walks of life. *Id.* at 72. The court found it relevant that the officer was not responding to a call and had yet to resume patrol. *Id.* The court concluded that "[t]he capacity in which he was acting was that of a passenger entering a motor vehicle, which is the same activities all passenger civilians do everyday." *Id.* at 73.

¶ 41		Although we recognize the general principle that pension statutes are to be liberally construed in favor of the pensioner (*Jones*, 384 Ill. App. 3d at 1068), we cannot conclude Summers was injured while performing an "act of duty." Following the *Johnson* decision, we focus on the capacity in which Officer Summers was acting rather than the precise physical act that caused the injury, *i.e.*, lifting a box. See *Rose v. Board of Trustees of the Mount Prospect Police Pension Fund*, 2011 IL App (1st) 102157, ¶ 75. Summers contends that delivering "special police equipment and supplies, in a police uniform, to police facilities throughout the City of Chicago" represents a special risk not assumed by ordinary citizens. Regardless of Summers' characterization of the delivered items, it appears that the capacity in which Summers was acting at the time of his injury was as a delivery person. In his affidavit appended to his disability application, Summers described his work as follows: "I load a truck on a daily basis and make deliveries of supplies, equipment, furniture, radios, etc., to police facilities." Unlike, for example, a patrol officer, Summers was acting in a capacity that has a "clear counterpart in civilian life." *Alm*, 352 Ill. App. 3d at 601.

¶ 42		Summers also contends that "[t]here is a reason only sworn police officers are assigned to the Equipment and Supply Section, Unit 172, and that the officers assigned to the unit are in *** uniform and armed with a firearm." We find this argument to be somewhat circular; essentially Summers' contention is that his position is given to uniformed, armed officers and therefore it involves a special risk because if it did not involve a special risk, the position would not be given to uniformed, armed officers. Adoption of this position would render the statute meaningless and compel a finding of act of duty for any uniformed officer performing an act assigned by order of a superior.

¶ 43		Summers further argues that the Board failed to draw a distinction between "was the officer injured merely when he was 'on duty' " or "was he performing his assigned duties when he was injured." We do not agree that the fact that Summers was performing his assigned duties is somehow dispositive. The fact that an officer was injured performing his assigned duties does not necessarily indicate that he was injured during the performance of an "act of duty." See, *e.g.*, *White*, 323 Ill. App. 3d at 736; *Morgan*, 172 Ill. App. 3d at 276.

¶ 44		In order for the Board to award duty disability benefits, the Pension Code requires Officer Summers' injury to have been incurred in the performance of an act of duty, inherently involving "special risk, not ordinarily assumed by a citizen in the ordinary walks of life." 40 ILCS 5/5-113 (West 2010). In the cases discussed above wherein the court found an act of duty, the officer was engaged in activity that involved the "protection of the public"

(*Johnson*, 114 Ill. 2d at 521)–an activity not ordinarily performed by private citizens: responding to a disturbance (*Wagner*); engaging in patrol duties (*Alm*, *Merlo*, *Jones*, and *Rose*); and addressing public safety hazards (*Merlo*, *Mingus*, and *Sarkis*). Although the Pension Code certainly does not limit the definition of "act of duty" to activities involving the protection of public safety, we agree with the Board that the statutory definition did not include moving police equipment and supplies.

¶ 45    Summers contends that his "situation is unique in that his job function is to deliver police equipment and to deny him a disability benefit because his position is not what we see as a traditional 'police duty' would make Officer Summers the only police officer in Chicago who has no recourse if he is injured while performing his duty assignment because he is also ineligible to file a claim for Worker's Compensation benefits" under section 1 of the Workers' Compensation Act (820 ILCS 305/1 (West 2010)). First, we are unmoved by Summers' argument that he is ineligible for worker's compensation benefits under the applicable statutory scheme. Second, we note that the Board did award Summers a disability benefit, albeit an "ordinary" as opposed to "duty" disability benefit. Third, it does not appear that the Board denied his duty disability benefit application because his position was not a "traditional" police duty. Instead, the Board's conclusion was that Summers' injury was not in the performance of an "act of duty"–an activity involving special risks not ordinarily assumed by citizens in ordinary walks of life.

¶ 46    Simply put, "not all police work involves special risks." *Fedorski*, 375 Ill. App. 3d at 374. The Board found that Summers was not working in a capacity involving special risks and therefore was not engaged in an "act of duty" at the time of his injury. For the reasons stated herein, we agree.

¶ 47                                Jurisdictional Issues

¶ 48    The Board contends that it "did not reach, and no court has subject matter jurisdiction to make the initial findings of fact and conclusions of law dealing with, issues pertaining to pre-existing conditions relevant to determining whether Summers would be entitled to benefits at the 50% or 75% level." In light of our conclusion that the Board did not err in awarding Summers a 50% ordinary disability benefit, we need not consider the Board's jurisdiction-based argument.

¶ 49                                CONCLUSION

¶ 50    In conclusion, Summers is not entitled to duty disability benefits because his disability was not caused by injury incurred in the performance of an "act of duty" as defined by the Pension Code. The decision of the Board is affirmed and the judgment of the circuit court is reversed.

¶ 51    Circuit court decision reversed; board decision affirmed.