2025 IL App (1st) 240735-U

No. 1-24-0735

Third Division
March 26, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | |
|---|---|
| BETH SVEC, | ) |
| | ) |
| | ) Appeal from the Circuit Court |
| Plaintiff-Appellee, | ) of Cook County. |
| | ) |
| v. | ) No. 2023 CH 02604 |
| | ) |
| THE RETIREMENT BOARD OF THE POLICEMEN'S | ) The Honorable |
| ANNUITY AND BENEFIT FUND OF THE CITY OF | ) Anna M. Loftus, |
| CHICAGO, | ) Judge Presiding. |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Lampkin and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held:*  Where the plaintiff's psychological injuries resulted from an act of police duty, the circuit court properly reversed the decision of the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago denying duty disability pension benefits.

¶ 2    Plaintiff Beth Svec was a detective with the Chicago Police Department (CPD) until she left active duty in 2017 for health reasons. In 2018, she sought duty disability pension benefits, claiming that she was disabled from her service as a police officer. Defendant, the Retirement

Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (the Board), denied plaintiff's request for duty disability benefits, but granted plaintiff ordinary disability benefits. Plaintiff filed a complaint for administrative review, and the circuit court of Cook County reversed, finding that plaintiff was eligible for duty disability benefits. The Board now appeals and, for the reasons set forth below, we affirm.

¶ 3                                BACKGROUND

¶ 4                   *Plaintiff's Background and Injury[1]*

¶ 5        Plaintiff joined the CPD in 1998, and worked various assignments as a police officer, including as a detective assigned to Area South. In May of 2016, plaintiff was assigned to a pilot program concerning firearm cases, in which a detective would respond to the scene of an arrest in which a firearm was recovered in order to ensure the investigation was handled appropriately for felony review purposes.

¶ 6        On May 30, 2016, plaintiff was assigned to investigate a case in which CPD officers had arrested two individuals for unlawful possession of a firearm and aggravated battery to a peace officer. As part of her investigation, plaintiff interviewed the arresting officers and witnesses. While interviewing witnesses, plaintiff learned that there were several cell phone videos of the incident which had been taken by witnesses. After viewing the videos, plaintiff discovered that some of the videos contradicted the version of events given by the arresting officers. Plaintiff communicated the results of her investigation to the Cook County State's Attorney's office,

---

[1] We note that, in addition to the instant administrative action, plaintiff filed a lawsuit against the City of Chicago, alleging retaliation under the Whistleblower Act (740 ILCS 174/1 *et seq.* (West 2020)), and prevailed in that litigation after a jury trial. The City of Chicago appealed to this court, and we largely affirmed. See *Svec v. City of Chicago*, 2024 IL App (1st) 230893. While the whistleblower action involves the same incident at issue in the instant appeal, our facts are taken from the record on appeal in the administrative action, not from the testimony and other evidence presented at the whistleblower trial. Furthermore, as the Board's factual findings on the matter are not at issue on appeal, we rely on the Board's recitation of the facts in describing the incident giving rise to the current appeal.

including the existence of video evidence, and the State's Attorney's office dropped the criminal charges against the arrestees.

¶ 7    After providing the results of her investigation, plaintiff's lieutenant removed her from Area South and reassigned her to a less-desirable district working midnight shifts. Plaintiff also began receiving poor performance evaluations and disciplinary complaints. Plaintiff continued working her police duties until she was placed on medical leave for an off-duty physical injury from December 19, 2016, through April 19, 2017.

¶ 8    While on medical leave, plaintiff was evaluated by her primary care physician in connection with complaints about anxiety related to the May 30, 2016, incident. Her doctor recommended that plaintiff remain off-duty and referred her to a therapist. Plaintiff was evaluated by a therapist, who diagnosed her with an adjustment disorder, accompanied by anxiety and depressed mood, and recommended weekly therapy. After approximately 48 therapy sessions, plaintiff was released to return to full, unrestricted duty in April 2017.

¶ 9    In March 2017, plaintiff filed a whistleblower lawsuit against the City of Chicago, alleging that she had been retaliated against for providing evidence which contradicted the arresting officers' accounts of the May 30, 2016, arrest. The case went to a jury trial and the jury ultimately found in plaintiff's favor, a decision which was largely affirmed on appeal. See *Svec v. City of Chicago*, 2024 IL App (1st) 230893.

¶ 10    Upon her return to police duties in April 2017, after news of her lawsuit against the city was circulated by local media, plaintiff was subjected to harassment related to the lawsuit by fellow officers and was called a " 'whistleblower' " on the open floor of the detective division. Shortly after returning from medical leave, plaintiff went on scheduled furlough. During that time, she was informed by a new detective that her lieutenant in Area South had publicly

" 'bashed' " her to other detectives about the lawsuit and had commented about how " 'unhinged' " she was.

¶ 11    Following her scheduled furlough period, in May 2017, plaintiff was placed on medical leave due to her ongoing depression "stemming from the 2016 arrest investigation and subsequently triggered by the lawsuit-related backlash she received." After undergoing a psychiatric evaluation, plaintiff was diagnosed with "moderate Major Depressive Disorder, Single Episode, and Unspecified Anxiety," and was prescribed medication. She never returned to work for CPD. Prior to the May 30, 2016, arrest and investigation, plaintiff was not under the care of any doctor for psychological issues.

¶ 12    Since filing the lawsuit, plaintiff also faced backlash from those outside of CPD, including "experienc[ing] constant shame and/or negative interactions from her residential community, which has a large population of CPD families, at social gatherings, on social media, and at her former/current place(s) of employment." She had also been terminated from subsequent employment outside of CPD due to her " 'complaints against the Department' " or otherwise in connection to her whistleblower case.

¶ 13                    *Application for Disability Benefits*

¶ 14    On February 26, 2018, plaintiff filed an application for disability benefits, requesting both ordinary and duty disability pension benefits. After an independent medical examination on April 13, 2018, the Board's doctor opined that the evidence corroborated the diagnoses provided by plaintiff's treating psychiatrist, namely, that she was suffering from " 'Major Depressive Disorder, Single Episode, of Moderate Severity and an Unspecified Anxiety Disorder.' " Based on this diagnosis, the doctor opined that plaintiff was not able to return to work in any capacity, including limited duty assignments. The Board held a hearing on

plaintiff's disability application on July 26, 2018, where it awarded her ordinary disability pension benefits, without prejudice to her claim for duty disability benefits, which would be decided at a later date.

¶ 15        Plaintiff was reexamined by the Board's doctor on November 9, 2022, following the jury's verdict in the whistleblower case. The doctor determined that plaintiff continued to suffer from major depressive disorder and anxiety disorder and opined that she could not return to duty in any capacity. The Board held a hearing on January 26, 2023, and issued a decision on February 23, 2023, in which it denied plaintiff's request for duty disability benefits but reaffirmed her entitlement to ordinary disability benefits, which had expired by operation of law on December 28, 2022.

¶ 16        In its analysis, the Board noted that, to be entitled to duty disability benefits, plaintiff was required to establish that (1) she was an active police officer, (2) she was disabled due to a physical or mental incapacity as a result of an act of duty, and (3) she was unable to perform any assigned duties with the CPD. The Board found that plaintiff had established that she was a police officer and "has met her burden of establishing she is disabled from performing her assigned duties in the Chicago Police Department." The Board, however, also found that she had not satisfied her burden of establishing that she was disabled as a result of an " 'act of duty.' "

¶ 17        The Board noted that it was "undisputed" that plaintiff "is disabled from full, unrestricted duty in CPD based on her ongoing psychological issues, including depression and anxiety." The Board, however, found that plaintiff did not satisfy the criteria for duty disability "because sufficient evidence in the record establishes her ongoing stress and related psychological symptoms are caused and/or triggered by off-duty occurrences." The Board noted that the

negative interactions identified by plaintiff as contributing to her disabling condition occurred in May 2016, when she was retaliated against by her supervisors, and following the news of her whistleblower action. The Board, however, determined that "[plaintiff's] psychological issues did not become disabling until after she filed her whistleblower lawsuit and was placed on medical leave due to the resulting backlash she experienced." Accordingly, the Board found that "her disability resulted from a culmination of negative occurrences and/or interactions related to her whistleblower case or history with CPD—not a single, identifiable act of police duty involving special risk."

¶ 18                                          *Administrative Review*

¶ 19        Plaintiff filed a complaint for administrative review in the circuit court of Cook County, seeking review of the Board's decision under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2022)). The matter came before the circuit court for a hearing on November 27, 2023, where plaintiff contended that the Board had erred in finding that her injuries were not the result of an act of duty.

¶ 20        In an extensive oral ruling on December 18, 2023, the circuit court reversed the judgment of the Board, finding that plaintiff's injuries were the result of an act of duty. The circuit court found that plaintiff was performing an act of duty in investigating the firearm case on May 30, 2016, and her conclusions regarding that investigation led to the harassment she suffered. As such, the circuit court found that "the harassment she suffered as a result of her performance of her police duties is sufficient to establish that her disability was caused by the performance of an act of duty."

¶ 21        The circuit court found unpersuasive the contention that plaintiff's injury was caused by the harassment she received, not her investigation, characterizing it as "a twisted way to look

at the facts." The circuit court found that such an argument conflated the act of duty with the injury, and emphasized that "[t]he act of duty was the on-duty investigation. The injury was the psychological damage caused by the harassment and demotion that was directly related to the investigation's findings and *** her decision to report that finding to her superiors." The circuit court further rejected the notion that the fact that some of the harassment occurred off-duty was relevant, finding that "[h]er act of duty exposed her to harassment by fellow officers and superiors. Some of this occurred while she was on duty, and some occurred off duty. But to argue that harassment occurred off duty so it is not connected to the on-duty act, is, I think, frankly, ridiculous." After further rejecting a number of arguments concerning the matter, the circuit court ultimately reversed the Board's decision and found that plaintiff was entitled to duty disability benefits.

¶ 22    The Board filed a motion seeking a stay pending appeal, and plaintiff filed a petition for attorney fees. On March 8, 2024, the circuit court denied the Board's motion for stay and stayed plaintiff's fee petition until the disposition of any appeal. The circuit court further found that there was no just reason for delaying appeal of its December 18, 2023, order and that the order was final and appealable pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). This appeal follows.

¶ 23                                   ANALYSIS

¶ 24    On appeal, the Board contends that the circuit court erred in finding that plaintiff is entitled to duty disability pension benefits. Under the Illinois Pension Code, a police officer who becomes disabled "as a result of injury incurred *** in the performance of an act of duty" is entitled to receive 75% of her salary at the time of the disability. 40 ILCS 5/5-154(a) (West 2022). A police officer who becomes disabled due to any other cause is entitled to 50% of her

salary, and the benefit period is limited based on the officer's length of service, with a maximum benefit period of five years. *Id.* § 5-155. As explained further below, in this case, there is no dispute that plaintiff was disabled or that she was entitled to some form of disability benefits. The sole issue on appeal is whether plaintiff's disability was the result of an "act of duty" so as to entitle her to duty disability benefits.

¶ 25                                   *Standard of Review*

¶ 26        Judicial review of the Board's decision is governed by the Administrative Review Law. 40 ILCS 5/5-228 (West 2022). In the case of an administrative review action, we review the decision of the administrative agency and not the decision of the circuit court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006) (*per curiam*). Under the Administrative Review Law, actions to review a final administrative decision "shall extend to all questions of law and fact presented by the entire record before the court." 735 ILCS 5/3-110 (West 2022). Additionally, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." *Id*. The reviewing court is not to reweigh the evidence or make an independent determination of the facts. *Kouzoukas v. Retirement Board of Policemen's Annuity & Benefit Fund*, 234 Ill. 2d 446, 463 (2009).

¶ 27        The reviewing court will defer to the agency's findings of fact unless they are against the manifest weight of the evidence. *Slater v. Department of Children & Family Services*, 2011 IL App (1st) 102914, ¶ 30. A finding is against the manifest weight of the evidence "only if the opposite conclusion is clearly evident." *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). The fact that an opposite conclusion is reasonable or that the reviewing court may have ruled differently does not justify reversal of the administrative

8

agency; "[i]f the record contains evidence to support the agency's decision, it should be affirmed." *Id.*

¶ 28       An administrative agency's decision on a matter of law, by contrast, is reviewed *de novo*. *Marconi*, 225 Ill. 2d at 532. In a case involving the agency's interpretation of a statute which it is charged with administering, the agency's interpretation "is considered relevant but not binding on the court." *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995). If the language of the statute is clear and unambiguous, the court must interpret the statute according to its terms without resorting to aids of construction. *Id.*

¶ 29       Finally, an administrative agency's decision on a mixed question of law and fact is reviewed for clear error. *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 143 (2006). This standard of review is deferential to the agency's expertise in interpreting and applying the statutes that it administers. *Schiller*, 221 Ill. 2d at 143. Where the decision of an administrative agency presents a mixed question of law and fact, " 'the agency decision will be deemed clearly erroneous only where the reviewing court, on the entire record, is left with the definite and firm conviction that a mistake has been committed.' " (Internal quotation marks omitted.) *Schiller*, 221 Ill. 2d at 143 (quoting *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 472 (2005)). Regardless of the standard of review applied, however, in all cases, the plaintiff bears the burden of proof, and relief will be denied if she fails to carry that burden. *Marconi*, 225 Ill. 2d at 532-33.

¶ 30       In this case, the Board contends that the appropriate standard of review for us to apply is the manifest-weight standard, as plaintiff's eligibility for a duty disability benefit is a question of fact. We, however, agree with plaintiff that a less deferential standard is appropriate since, here, there is no dispute as to the facts underlying plaintiff's claim. This is not a case in which

the Board was required to determine if the plaintiff's injury resulted from work duties or from an alternate source, as in the case cited by the Board in support of application of the manifest-weight standard. See *Carrillo v. Park Ridge Firefighters' Pension Fund*, 2014 IL App (1st) 130656. Instead, in this case, there is no dispute that (1) plaintiff investigated a firearm-related arrest on May 30, 2016; (2) as a result of the investigation, she was harassed at work, resulting in her filing a whistleblower action; (3) the filing of the whistleblower action led to an increase in the harassment, both at work and elsewhere; and (4) as a result of the harassment, plaintiff became disabled. Thus, there is no factual question at issue on appeal.

¶ 31       Instead, the sole issue we are asked to consider is whether the facts as established constitute an "act of duty" for purposes of entitlement to duty disability benefits. Accordingly, we must determine whether this question (1) involves the interpretation of the statutory definition of an "act of duty," which would suggest *de novo* review, or (2) requires our examination of the legal effect of a given set of facts, which would constitute a mixed question of fact and law. Courts addressing this issue in similar circumstances have come to varying conclusions, with a number of courts finding that the interpretation of whether undisputed facts constitute an "act of duty" represent a question of law subject to *de novo* review. See, *e.g.*, *Sarkis v. City of Des Plaines*, 378 Ill. App. 3d 833, 837 (2008); *Fedorski v. Board of Trustees of Aurora Police Pension Fund*, 375 Ill. App. 3d 371, 373 (2007). But see, *e.g.*, *Jones v. Board of Trustees of Police Pension Fund of City of Bloomington*, 384 Ill. App. 3d 1064, 1068 (2008) (finding mixed question of fact and law); *Merlo v. Orland Hills Police Pension Board*, 383 Ill. App. 3d 97, 100 (2008) (same). In this case, however, we reach the same conclusion regardless of whether we review the matter *de novo* or apply the more deferential clearly-erroneous standard.

¶ 32                                    *Duty Disability*

¶ 33        As noted, a police officer who has become disabled due to an "act of duty" is entitled to a duty disability pension benefit as provided in section 5-154(a) of the Pension Code. See 40 ILCS 5/5-154(a) (West 2022). The Pension Code defines an "act of duty" as:

> "Any act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life, imposed on a policeman by the statutes of this State or by the ordinances or police regulations of the city in which this Article is in effect or by a special assignment; or any act of heroism performed in the city having for its direct purpose the saving of the life or property of a person other than the policeman." *Id.* § 5-113.

¶ 34        A police officer need not be engaged in dangerous activities to be engaged in an "act of duty" for purposes of the Pension Code. *Johnson v. Retirement Board of Policeman's Annuity & Benefit Fund*, 114 Ill. 2d 518, 521-22 (1986). Where, however, an officer is alleging disability based on work-related psychological issues, the officer must demonstrate that her disabilities " 'are the result of a specific, identifiable act of duty unique to police work.' " *Robbins v. Board of Trustees of Carbondale Police Pension Fund of City of Carbondale*, 177 Ill. 2d 533, 542 (1997) (quoting *Trettenero v. Police Pension Fund*, 268 Ill. App. 3d 58, 63 (1994)). Disability due to the general nature of being a police officer is not sufficient, nor is disability due to a cause of stress which is not unique to police work. *Id.*

¶ 35        In this case, the Board denied plaintiff a duty disability pension benefit due to its determination that plaintiff's disability "resulted from a culmination of negative occurrences and/or interactions related to her whistleblower case or history with CPD—not a single, identifiable act of police duty involving special risk." We cannot agree.

11

¶ 36 As the Board itself recognizes in its decision, plaintiff's disability had its genesis in plaintiff's actions of reporting possible police misconduct on May 30, 2016. Prior to that date, there is no evidence that plaintiff suffered from mental health issues, and the record indicates that plaintiff had worked for the CPD for decades without incident—indeed, plaintiff's promotion to the rank of detective, as well as her participation in the firearm pilot program and on the hostage barricade team, suggest that plaintiff was successful at her position. Everything that followed the May 30, 2016, incident—the retaliation, the whistleblower action, and the harassment following the filing of that action—all stemmed from that single, identifiable act. Despite the Board's contentions to the contrary in its brief on appeal, plaintiff's conduct of May 30, 2016, was clearly an "act of duty." In her capacity as a CPD detective, plaintiff was assigned to investigate a firearm-related arrest. During the course of her investigation, plaintiff discovered that the arresting officers appeared to be fabricating their account of the arrest, and, pursuant to her duties as a police officer, she reported the matter.

¶ 37 We wholly reject the Board's suggestion that "[p]laintiff's whistleblowing was not an act involving special risk unique to police service inasmuch as it did not involve protection of public safety and was an act with a civilian counterpart." While the Board correctly observes that non-police officers may also engage in whistleblowing activity, that in no way means that plaintiff's conduct was not an act of duty. As our supreme court has noted, many responsibilities of police officers have similarities to those involved in civilian occupations. *Johnson*, 114 Ill. 2d at 522. "The crux is the capacity in which the police officer is acting." *Id.* Here, plaintiff was performing her duties as a police officer by investigating the arrest of two citizens of Chicago and, in the course of performing such duties, discovered possible misconduct by the arresting officers. Plaintiff then reported this misconduct, which is itself an

act in protection of public safety and her duty as a sworn officer. There is simply no civilian counterpart to a police detective conducting an investigation of an arrest and reporting the results of that investigation. See *id.* (finding "no comparable civilian occupation to that of a traffic patrolman responding to the call of a citizen"); *Village of Stickney v. Board of Trustees of Police Pension Fund of Village of Stickney*, 363 Ill. App. 3d 58, 65-66 (2005) (finding claimant's interactions with superior occurred in the context of his police duties, all of which constituted acts of duty). Accordingly, plaintiff's conduct on May 30, 2016, was an act of duty.

¶ 38   The question, then, becomes whether plaintiff became disabled "as a result of injury incurred *** in the performance of an act of duty." 40 ILCS 5/5-154(a) (West 2022). In the administrative review proceedings below, the circuit court found that, while the "act of duty" was plaintiff's May 30, 2016, conduct, "[t]he injury was the psychological damage caused by the harassment and demotion that was directly related to the investigation's findings and *** her decision to report that finding to her superiors." We agree.

¶ 39   There appears to be no dispute that plaintiff became disabled as a result of the retaliation and harassment she received due to her whistleblowing activities. The Board acknowledges this fact in its brief, as it states that plaintiff's disability "was caused by multiple instances of workplace harassment, reassignment, negative performance reviews, retaliation, and avoidance behaviors experienced by Plaintiff subsequent to her investigation into the gun case on May 30, 2016."[2] Instead, the Board's primary argument is that plaintiff is not entitled to

---

[2] We note that the Board spends considerable time in its brief dismissing these stressors as "result[ing] from the general nature of police work and stress civilians regularly experience in their jobs." Whether general instances of these types of stressors would give rise to a duty disability claim, however, is not the issue in this case, and the Board's characterization verges on the disingenuous. It is entirely clear that the stressors identified by plaintiff arose directly from her whistleblowing activities, as all of the undisputed evidence clearly establishes—indeed, the jury in the whistleblower action found as much when it found in plaintiff's favor on her claims of retaliation. See *Svec*, 2024 IL App (1st) 230893. We

duty disability benefits since plaintiff's psychological injuries were not the direct result of her whistleblowing activities, but were the result of the actions taken by her fellow police officers in response to her whistleblowing activities.

¶ 40    The Board's argument relies on our supreme court's decision in *Robbins*, which the Board interprets as "rejecting" the type of causal analysis used in evaluating a common-law tort claim. Accordingly, the Board claims that "the idea that 'but for' Plaintiff's police investigation she would not have been subject to workplace harassment and adverse employment actions causing her stress, anxiety and depressive disorder, is not sufficient to award a line of duty disability." The Board, however, reads *Robbins* too narrowly.

¶ 41    In that case, the police officer was seeking duty disability benefits based on stress caused by (1) his supervisor's criticism of the timeliness and quality of his reports, (2) his anxiety that fellow officers were younger and better trained, and (3) an incident in which he witnessed a suicide while responding to a domestic violence call. *Robbins*, 177 Ill. 2d at 536. In reversing the Board's denial of duty disability benefits, the appellate court focused on the Pension Code's requirement that the injury be " 'incurred in or resulting from the performance of an act of duty' " (*id.* at 543 (quoting 40 ILCS 5/3-114.1 (West 1994))), and, applying tort law principles of causation, concluded that a police officer should not be deprived of a duty disability benefit so long as one of the causes of disability resulted from an act of duty (*id.*). Since it found that the plaintiff's disabling mental condition was caused, at least in part, by his on-duty functions as a police officer, the appellate court found that the plaintiff was entitled to a duty disability benefit. *Id.*

---

therefore have no need to further engage with the Board's arguments concerning whether plaintiff's stressors are the type generally borne by police officers in the course of their employment.

¶ 42    The supreme court criticized the appellate court's use of "common law concepts of negligence and proximate cause, and not on the plain language of the Pension Code." *Id.* Instead, the supreme court found that the language of the Pension Code required that "the line-of-duty disability result from an act of duty," so where the record contained evidence that the plaintiff's disability was the result of generalized stress and not a specific act of police duty, the Board properly denied duty disability benefits. *Id.*

¶ 43    We do not read *Robbins* as prohibiting a duty disability benefit in a situation such as that present in the case at bar. The *Robbins* court made clear that the flaw with the appellate court's analysis was that it conflicted with the language of the Pension Code, in that the appellate court "awarded [the plaintiff] a line-of-duty disability pension based on generalized police stress of multiple origins that caused his disability," when the Pension Code required that the disability result from an act of duty. *Robbins*, 177 Ill. 2d at 543. Indeed, the appellate court in *Robbins* did not engage in any analysis as to whether the source of the injury satisfied the requirements to be considered an "act of duty" under the Pension Code; it found only that "the overwhelming weight of the doctors' testimony was that [the claimant's] debilitating mental condition was caused, at least in part, *by his on-duty functions as a police officer*." (Emphasis added.) *Robbins v. Board of Trustees of Carbondale Police Pension Fund of City of Carbondale*, 283 Ill. App. 3d 823, 829 (1996), *overruled*, 177 Ill. 2d 533. The supreme court in *Robbins* did not opine as to whether a "but for" causation analysis would be appropriate where there is a direct relationship between the disability and a specific identifiable act of duty.

¶ 44      Notably, the Board has not cited any authority interpreting *Robbins* in the same way it urges us to do in the instant appeal.[3] In fact, we observe that at least one other court has previously rejected a similar interpretation of *Robbins*. See *Prawdzik v. Board of Trustees of Homer Township Fire Protection District Pension Fund*, 2019 IL App (3d) 170024, ¶ 52 (finding that the defendant board had "misconstrue[d]" *Robbins*, noting that "[a]though the *Robbins* court rejected the appellate court's reliance on tort-based standards of causation ***, it did so because the appellate court had failed to apply the governing statutory definition of 'act of duty' for police officers"). From our independent research, no other court has interpreted *Robbins* to restrict any kind of causation analysis in determining the availability of duty disability benefits, as the Board seeks to do here.[4]

¶ 45      We also note that, post-*Robbins*, our supreme court has cited with approval the proposition that " '[t]here is no requirement that the duty-related incident be the originating or primary cause of the injury, although a sufficient nexus between the injury and the performance of the duty must exist' " (*Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 505 (2007) (quoting *Barber v. Board of Trustees of Village of South Barrington Police Pension Fund*, 256 Ill. App. 3d 814, 818 (1993)). This comports with our interpretation of *Robbins*, namely, that the *Robbins* court was primarily concerned with the appellate court's decision to

---

[3] While the Board suggests that *Kelly v. Retirement Board of Policemen's Annuity & Benefit Fund of City of Chicago*, 2022 IL App (1st) 210483, supports its interpretation, that case concerned the source of the plaintiff's disability, not the causal analysis at issue here, and its discussion of *Robbins* occurred in that context.

[4] The only case which even arguably addresses the *Robbins* court's causation analysis is *Marquardt v. City of Des Plaines*, 2018 IL App (1st) 163186, ¶ 27, in which, in the context of interpreting a statute providing for health insurance benefits for public employees, the appellate court referenced *Robbins* as "caution[ing] against introducing common law concepts of negligence and proximate cause into a statute when those concepts are not explicitly provided for in a statute." Notably, however, applying the concept of proximate cause in that case would have *limited* the plaintiff's eligibility for benefits.

apply common-law concepts instead of applying the language of the statute. Indeed, the same language which was quoted with approval by our supreme court in *Wade* was relied upon by the appellate court in *Robbins*, making it clear that the supreme court's concern in *Robbins* was not focused on this proposition. See *Robbins*, 283 Ill. App. 3d at 829.

¶ 46    Numerous other courts have also indicated that, in order to obtain duty disability benefits, "a claimant must only prove that the duty-related accident 'is a causative factor contributing to the claimant's disability' " (*Rose v. Board of Trustees of Mount Prospect Police Pension Fund*, 2011 IL App (1st) 102157, ¶ 92 (quoting *Luchesi v. Retirement Board of Firemen's Annuity & Benefit Fund*, 333 Ill. App. 3d 543, 550 (2002))). See also, *e.g.*, *Buckner v. University Park Police Pension Fund*, 2013 IL App (3d) 120231, ¶ 14. In several such cases, this resulted in the award of duty disability benefits where the act of duty and the disability did not occur in immediate succession. See, *e.g.*, *Rose*, 2011 IL App (1st) 102157, ¶ 97 (reversing Board's denial of duty disability benefits where claimant's act of duty in February 2004 contributed to his disability despite the fact that he was not disabled until a subsequent off-duty injury in June 2004); *Devaney v. Board of Trustees of Calumet City Police Pension Fund*, 398 Ill. App. 3d 1, 12 (2010) (rejecting Board's claim that an intervening cause "[broke] the chain of causation" between the act of duty and the disabling injury); *Warner v. Retirement Board of Policemen's Annuity & Benefit Fund of City of Chicago*, 2022 IL App (1st) 200833-U, ¶ 67 (reversing Board's denial of duty disability benefits where claimant's disabling anger was "causally related" to former psychological injuries caused by an act of duty).

¶ 47    We recognize the Board's concern that awarding duty disability benefits for injuries which are arguably a step removed from the act of duty could lead to a slippery slope in which claimants seek such benefits for ever more attenuated connections. In this case, however,

plaintiff's act of duty in investigating the May 30, 2016, arrest led directly—and immediately—to retaliation and harassment by her superior and fellow officers, which escalated after she filed a whistleblower complaint. This retaliation and harassment resulted in plaintiff's psychological injuries. As such, plaintiff became disabled "as a result of injury incurred *** in the performance of an act of duty" (40 ILCS 5/5-154(a) (West 2022)) and she is therefore entitled to a duty disability pension benefit. Consequently, we affirm the judgment of the circuit court which reversed the decision of the Board.

¶ 48                                CONCLUSION

¶ 49        For the reasons set forth above, plaintiff is entitled to a duty disability pension benefit, and the circuit court therefore properly reversed the Board's denial of such a benefit.

¶ 50        Affirmed.