2025 IL App (1st) 242166-U

FIRST DISTRICT,
SIXTH DIVISION
May 16, 2025

No. 1-24-2166

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| ROBIN A. GONZALES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, Illinois. |
| v. | ) | |
| | ) | |
| THE RETIREMENT BOARD OF THE | ) | No. 23 CH 09970 |
| POLICEMEN'S ANNUITY AND BENEFIT FUND | ) | |
| OF THE CITY OF CHICAGO, | ) | Honorable |
| | ) | Eve M. Reilly, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice Tailor and Justice C.A. Walker concurred in the judgment.

**ORDER**

¶ 1        *Held*:   We affirm the judgment of the circuit court confirming a decision of the Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago (Board) that denied plaintiff duty disability benefits, finding no clear error in the Board's decision that her disability did not result from an activity involving "special risk."

¶ 2        Plaintiff Robin Gonzales, a patrol officer for the Chicago Police Department (CPD), was injured during mandatory wellness training. She sought a line-of-duty disability benefit under the Illinois Pension Code (Code) (40 ILCS 5/5-101 *et seq.* (West 2020)). The Retirement Board of

the Policemen's Annuity and Benefit Fund of the City of Chicago (Board) found she was disabled and entitled to an ordinary disability benefit, but denied duty disability benefits because her injury did not result from an "act of police duty inherently involving special risk." 40 ILCS 5/5-113 (West 2020). Gonzales filed for administrative review and the circuit court affirmed the Board's decision. We affirm.

¶ 3                                           I. BACKGROUND

¶ 4           At all relevant times, Gonzales was a member of the CPD, having been appointed in 2008. On August 27, 2021, she attended a mandatory "Officer Wellness and Resiliency Training" session at a CPD training site. The session consisted of classroom instruction as well as physical training involving stretching, yoga, and other physical movements. Halfway through the physical training, Gonzales began experiencing severe lower back pain. She told the instructor that she was not feeling well and discontinued the exercises.

¶ 5           Gonzales was subsequently diagnosed with multiple conditions in her lumbar spine, including a herniated disc, spondylolisthesis, and spinal stenosis at her L5 and S1 vertebrae. She underwent two corrective surgeries, both of which were unsuccessful. After a period of treatment and convalescence, she was not able to return to work with the CPD.

¶ 6           On December 7, 2022, Gonzales filed an application with the Board seeking duty disability benefits pursuant to section 5-154 of the Code (40 ILCS 5/5-154 (West 2020)). Pursuant to section 5-156 of the Code (40 ILCS 5/5-156 (West 2020)), the Board selected Dr. Jay Levin, an orthopedic surgeon, to perform an independent medical examination ("IME") of Gonzales. In a report dated March 21, 2023, Dr. Levin found that Gonzales could not safely use her CPD-approved firearm or drive a motor vehicle in a high-speed chase, and she lacked the physical ability to safely effectuate the arrest of an active resister. He concluded that Gonzales is

disabled and cannot return to work in any capacity. He also opined that Gonzales' injury was caused by the August 27, 2021, training session and was not exacerbated by any prior condition.

¶ 7   On October 30, 2023, the Board held a hearing on Gonzales' application. Medical records and CPD records were admitted in evidence by way of stipulation. Gonzales was the sole witness on her behalf. She testified that on the date of the training session she was on limited duty assignment answering nonemergency 311 calls. She was not told she could opt out of the yoga session due to her limited duty status. Gonzales testified the training was designed for law enforcement and "unique to the police profession" where they learned de-escalation techniques to calm themselves and subjects, as well as techniques for assessing situations to avoid excessive use of force. When asked to clarify what the physical training entailed, she said: "Stretching, breathing techniques. *** We were standing up. We were sitting down. *** It was all mobile movements, everything like that." They were not roleplaying law enforcement scenarios, and she was wearing plain clothes.

¶ 8   Officer Wayne Metcalfe testified on behalf of the Board that he attended the CPD wellness training on January 19, 2021. He said the training covers finance, nutrition, health, and "the behavior of a police officer in society." At the end of the session, the officers "learn to relax and do some breathing and physical techniques in order to calm [themselves] and live a healthier lifestyle, which is yoga." At his session, the instructor said anyone pregnant, injured, or on light duty did not have to participate in yoga. Metcalfe opted out because he had a back injury. He acknowledged his training was held at a different facility than Gonzales' training and might have been conducted by a different instructor.

¶ 9   Metcalfe observed the yoga portion of the training session, which was around 20 minutes long. He described it as follows:

"The officers had to complete the yoga by doing standing, doing bend-over stretches, touching their toes. They'd sit down on a mat. They reached forward, touched their toes. They laid their head back on a block and lifted their legs. *** They'd get on their knees like in a doggy stance and stretch their leg out backwards and do a forward lean and lift up from the pelvis area to the arms in a bent position ***."

¶ 10    On November 30, 2023, the Board issued a decision finding that Gonzales was disabled and was entitled to an ordinary disability benefit, but not duty disability benefits, since her injury was not incurred "in the performance of an act of duty" as defined in section 5-113 of the Code (40 ILCS 5/5-113 (West 2020)). The Board reasoned that the training did not involve "special risk" not ordinarily assumed by citizens, since "[c]ivilians regularly engage in physical training of the sort [Gonzales] engaged in, specifically, yoga and stretching." Accordingly, the Board awarded Gonzales an ordinary disability benefit at 50% of her salary, rather than duty disability benefits at 75% of her salary. See 40 ILCS 5/5-154, 5-155 (West 2020).

¶ 11    On December 12, 2023, Gonzales filed a timely petition for administrative review in the circuit court. The court entered an order confirming the Board's decision. Gonzales appeals.

¶ 12                                II. ANALYSIS

¶ 13    In an administrative review action, we review the decision of the Board, not the decision of the circuit court. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007). Factual findings are reviewed under the manifest weight of the evidence standard, meaning we defer to the Board's findings unless the opposite conclusion is clearly evident. *Id.* at 504-05. Legal questions are reviewed *de novo*, and mixed questions of law and fact are reviewed under the clearly erroneous standard. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006). "An administrative decision is clearly erroneous where the reviewing court

is left with the definite and firm conviction that a mistake has been made." *Kouzoukas v. Retirement Board of Policemen's Annuity and Benefit Fund of City of Chicago*, 234 Ill. 2d 446, 464 (2009). Here, the Board's finding that Gonzales' injury did not result from an "act of duty" is a mixed question of law and fact that we review under the clearly erroneous standard.

¶ 14 Section 5-154(a) of the Code provides, in relevant part, that an active police officer who becomes disabled as a result of injury "in the performance of an act of duty" is entitled to duty disability benefits. 40 ILCS 5/5-154(a) (West 2020). As relevant to this appeal, section 5-113 defines an "act of duty" as:

"Any act of police duty inherently involving special risk, not ordinarily assumed by a citizen in the ordinary walks of life imposed on a policeman by the statutes of this State or by the ordinances or police regulations of the city in which this Article is in effect or by a special assignment ***." 40 ILCS 5/5-113 (West 2020).

¶ 15 The seminal case interpreting "act of duty" is *Johnson v. Retirement Board of Policemen's Annuity & Benefit Fund*, 114 Ill. 2d 518 (1986). In *Johnson*, our supreme court held that whether an officer has been injured in the performance of an act of duty is determined by the capacity in which they were acting when injured, rather than the precise physical act that caused the injury. *Id.* at 522-23. The plaintiff in *Johnson* was an officer who slipped and fell on wet pavement while responding to a citizen's call for assistance. The *Johnson* court found he was injured in the performance of an act of duty. The court explained that an officer responding to a citizen's call "must have his attention and energies directed towards being prepared to deal with any eventuality" and has a duty to respond, "regardless of the hazard ultimately encountered," both of which have no counterpart in civilian life. *Id.* at 522; see also *Alm v. Lincolnshire Police Pension Board*, 352 Ill. App. 3d 595, 602 (2004) (officer injured on bicycle patrol was entitled to

a line-of-duty benefit, since he was required to ride his bicycle at night over varying terrain while looking after his own safety and remaining vigilant in the performance of his patrol duties).

¶ 16     Following *Johnson*, numerous cases have analyzed the capacity in which an officer was acting at the time of their injury. In *Summers v. Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago*, 2013 IL App (1st) 121345, ¶ 4, the plaintiff officer worked for the CPD equipment and supply section, delivering police equipment to police facilities. *Id.* ¶ 4. He was injured when a box he was lifting fell out of his hands. *Id.* ¶ 5. We affirmed the denial of duty disability benefits, finding the officer sustained his injury while acting in the capacity of a delivery person, an activity with a "clear counterpart in civilian life." (Internal quotation marks omitted.) *Id.* ¶ 41.

¶ 17     We reached a similar conclusion in *Morgan v. Retirement Bd. of the Policemen's Annuity & Benefit Fund*, 172 Ill. App. 3d 273 (1988). While filling out police reports, the plaintiff officer attempted to sit in a chair which rolled away from him, causing him to fall on the floor. We affirmed the denial of duty disability benefits, observing that "countless civilian occupations do involve the completion of reports" and "while completing such reports, many civilians sit or attempt to sit in chairs." *Id.* 276-77.

¶ 18     In *Swoboda v. Board of Trustees of Village of Sugar Grove Police Pension Fund*, 2015 IL App (2d) 150265, ¶ 3, the plaintiff officer injured his shoulder while bench pressing during physical fitness testing. We affirmed the denial of duty disability benefits, since "[c]itizens in ordinary walks of life engage in weightlifting" and the risk of sustaining a weightlifting injury was not a "special risk" within the meaning of section 5-113. *Id.* ¶ 17.

¶ 19     By contrast, in *Gilliam v. Board of Trustees of the City of Pontiac Police Pension Fund*, 2018 IL App (4th) 170232, we found an officer was entitled to duty disability benefits where she

was injured while attempting to perform a "parallel curb ascent" during a bicycle patrol training session. The session was designed to train the officers in bicycle patrol techniques to " 'foil the bad guys every time.' " *Id.* ¶ 35 (quoting the course description). Based on the nature of the officer's training, we found she was acting in the capacity of a bicycle patrol officer which involved special risks of police patrol. She was required to learn the parallel curb ascent technique "as a safety maneuver, a diversive maneuver, or as an assertive maneuver in a felony pursuit *** while experiencing the associated risks and dangers unique to the police profession." *Id.* ¶ 38. Accordingly, we affirmed the circuit court's reversal of the Board's decision denying duty disability benefits.

¶ 20    We find the instant case analogous to *Summers*, *Morgan*, and *Swoboda* rather than *Gilliam* and *Johnson* in which plaintiff Gilliam was acting in the capacity of a bicycle patrol officer and plaintiff Johnson was responding to a citizen's call for assistance.

¶ 21    Metcalfe testified that the yoga portion of the training session was intended to teach the officers "to relax and do some breathing and physical techniques in order to calm [themselves] and live a healthier lifestyle." His testimony was corroborated by Gonzales, who acknowledged the physical training did not involve roleplaying law enforcement scenarios. Instead, they were stretching, standing up and sitting down, and performing breathing exercises in plain clothes. Based on this testimony, it is apparent that Gonzales was injured in the capacity of an individual seeking to calm herself and live a healthier lifestyle, an activity with a "clear counterpart in civilian life." See *Summers*, 2013 IL App (1st) 121345, ¶ 41 (internal quotation marks omitted). Accordingly, the activity is not an "act of duty" for purposes of section 5-113. As we stated in *Swoboda*, the definition of an act of duty "is not so broad as to embrace physical-fitness

activities in which individuals in ordinary walks of life participate." *Swoboda*, 2015 IL App (2d) 150265, ¶ 19. Yoga is such an activity.

¶ 22      Gonzales argues the session was mandatory under a federal consent decree and CPD Special Order. However, an activity being a mandatory part of an officer's job does not render it an "act of duty" under section 5-113 if said activity has a clear counterpart in civilian life. See, *e.g.*, *Summers*, 2013 IL App (1st) 121345 (officer was performing job duties for the CPD equipment and supply section). Gonzales further argues that she was acting in the capacity of a patrol officer because the session included training on de-escalation and other techniques for handling crisis situations while on patrol. However, the proper focus for an "act of duty" analysis is the activities that the officer is engaged in at the time he or she is injured. *Fedorski v. Board of Trustees of the Aurora Police Pension Fund*, 375 Ill. App. 3d 371, 375-76 (2007). Here, the training session was lengthy, commencing at 1 p.m. and continuing past 8:30 p.m., and it covered such varied topics as finance, nutrition, health, and wellness as well as de-escalation techniques. At the time of Gonzales' injury, she was wearing plain clothes and was not practicing, learning about, or roleplaying de-escalation techniques. Rather, she was doing yoga "to relax *** and live a healthier lifestyle." Under these facts, the Board's finding that Gonzales was not injured "in the performance of an act of duty" (40 ILCS 5/5-154(a) (West 2020)) and its denial of duty disability benefits were not clearly erroneous.

¶ 23      Finally, Gonzales argues in her reply brief that the Board erred in allowing Metcalfe to testify over her objection because he was not disclosed as a witness. Gonzales has forfeited this issue by raising it for the first time in her reply brief where the appellee can no longer respond to it. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("[p]oints not argued are forfeited and shall not be raised in the reply brief ***"). Moreover, Gonzales has not shown any prejudice from the

Board's failure to disclose Metcalfe as a witness. Although she states that her counsel "was forced to cross-examine Metcalfe with little or no preparation," she does not set forth any additional facts that counsel would have elicited or attempted to elicit with greater preparation. Additionally, after Metcalfe testified, Gonzales' counsel was permitted to reopen the proofs to ask further questions of Gonzales in rebuttal. Under these circumstances, we decline to overlook Gonzales' forfeiture of this issue.

¶ 24                                III. CONCLUSION

¶ 25        We affirm the judgment of the circuit court confirming the Board's decision denying Gonzales' application for duty disability benefits and instead awarding her an ordinary disability benefit under the Illinois Pension Code.

¶ 26        Affirmed.